IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Katherine Lanteri, individually and on behalf of all others similarly situated, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )   No.   1:13-cv-1501<br>) |
| Credit Protection Association, L.P., a Texas limited partnership, and ETAN General, Inc., a Texas corporation, | )<br>)<br>)<br>) |
| Defendants. | )   <u>Jury Demanded</u> |

**COMPLAINT - CLASS ACTION**

Plaintiff, Katherine Lanteri, individually and on behalf of all others similarly situated, brings this action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq. ("TCPA") and the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA"), for a finding that Defendants' telephone calls to cellular telephones violated the TCPA and the FDCPA, and to recover damages for Defendants' violation of same, and alleges:

**JURISDICTION AND VENUE**

1.   This Court has jurisdiction under 28 U.S.C. § 1331 (general federal question), 28 U.S.C. §1337 (commerce and antitrust regulations; amount in controversy), 47 U.S.C. § 227 (TCPA), and 15 U.S.C. § 1692k(d) (FDCPA).

2.   Venue in this District is proper because: a) the acts and transactions occurred here; b) Plaintiff resides here; and Defendants transact business here.

**PARTIES**

3.   Plaintiff Katherine Lanteri ("Lanteri") is, and at all times mentioned herein

1

was, an individual citizen of the State of Indiana, who resides in Southern District of Indiana.

4. Defendant Credit Protection Association, L.P. ("CPA") is a Texas limited partnership, that acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, delinquent consumer debts, including delinquent consumer debts in the Southern District of Indiana. In fact, CPA was acting as a debt collector as to the delinquent consumer debt it attempted to collect from Plaintiff.

5. Defendant CPA is authorized to conduct business in the State of Indiana and maintains a registered agent within the State of Indiana, see, record from the Indiana Secretary of State, attached as Exhibit A.  In fact, CPA conducts business in Indiana

6. Defendant CPA is licensed as a debt collection agency in the State of Indiana, see, record from the Indiana Secretary of State, Securities Division, attached as Exhibit B.  In fact, Defendant CPA acts as a collection agency in Indiana.

7. Defendant, ETAN General, Inc. ("ETAN"), is a Delaware corporation and the general partner of Defendant CPA.  ETAN directs and controls the actions of CPA. Moreover, ETAN also acts as a debt collector, as defined by § 1692a of the FDCPA, because it regularly uses the mails and/or the telephone to collect, or attempt to collect, directly or indirectly, delinquent consumer debts, including delinquent consumer debts in the Southern District of Indiana.  In fact, ETAN was acting as a debt collector as to the delinquent consumer debt it attempted to collect from Plaintiff.

## THE TCPA

8.      In 1991, Congress enacted the Telephone Consumer Protection Act, 47 U.S.C. § 227 (TCPA), in response to a growing number of consumer complaints regarding certain telemarketing practices - for example, computerized calls to private homes. Congress determined that federal legislation was needed because telemarketers, by operating interstate, were escaping state-law prohibitions on intrusive nuisance calls. See, Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740 (2012).

9.      Accordingly, the TCPA regulates, among other things, the use of prerecorded messages and use of automated telephone equipment, or "autodialers". Specifically, the plain language of section 227(b)(1)(A)(iii) prohibits the use of prerecorded messages or autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party.

10.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

11.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. The FCC "emphasize[d] that prior express consent is

deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Request of ACA International for Clarification and Declaratory Ruling*, CG Docket No. 02-278, 23 FCC Rcd 559, 565-566 (Dec. 28, 2007) released January 4th, 2008,("FCC 2008 Order")

12. "Automatic telephone dialing system" ("ATDS") means any equipment that has the "*capacity* to dial numbers without human intervention." See, Griffith v. Consumer Portfolio Serv., Inc., 2011 WL 3609012 (N.D.Ill. 2011).

13. One of the newest types of bulk communications is via an ATDS is through Short Message Services. The term "Short Message Service" or "SMS" is a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 160 characters.

14. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS or "text" message call is successfully made, the recipient's cell phone rings or otherwise notes the receipt of the text message, alerting him or her that a call is being received. As cellular telephones are inherently mobile and are frequently carried on their owner's person, calls to cellular telephones, including SMS messages, may be received by the called party virtually anywhere worldwide.

15. Unlike more conventional advertisements, such text messages actually costs their recipients money, because cell phone users must frequently pay their wireless service providers either for each text message call they receive or incur a usage

allocation deduction to their text plan, regardless of whether or not the message is authorized.

16.     Defendants have caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies these calls, but also because consumers frequently have to pay their cell phone service providers for the receipt of such calls and such calls are an intrusion upon seclusion, diminish cellular battery life, and waste data storage capacity.

## THE FDCPA

17.     The FDCPA provides consumers with important rights to protect them from "unfair, harassing and deceptive debt collection practices." See, S. Rep. No. 382 95th Cong. 1st Sess., 1-2 (1977), reprinted in U.S.C.C.A.N. 1696).   Congress found that "[T]here is abundant evidence of the use of abusive, deceptive, and unfair collection practices by many debt collectors" and that those practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs and to invasions of individual privacy, see, 15 U.S.C. § 1692(a).   Thus, the FDCPA was passed to eliminate abusive debt collection practices, see, 15 U.S.C. § 1692(e); Jerman v. Carlisle. McNellie, Rini, Kramer & Ulrich. L.P.A., et al., 559 U.S. 573, 577 (2010).

18.     Accordingly, the FDCPA broadly prohibits abusive and unfair collection practices, including contacting a consumer in an attempt to collect a debt after the debt collector has received written notice to cease communications or notice of attorney representation, see, 15 U.S.C. § 1692c(c), 15 U.S.C. § 1692c(a)(2).   Moreover, demanding payment of a debt that is no longer owed, due to a bankruptcy, constitutes the use of a false and/or deceptive or misleading representation or means in connection

with the collection of a debt, in violation of § 1692e of the FDCPA, see, Randolph v. IMBS, Inc., 368 F3d 726, 728-730 (7th Cir. 2004).

## FACTUAL BACKGROUND

19.  At all times relevant, Plaintiff Lanteri was an individual residing in the State of Indiana. Lanteri is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. §153(10).

20.  With regards to Plaintiff, Defendants were attempting to collect an alleged debt owed to Comcast which Plaintiff incurred for personal, family or household purposes, namely cable services.

21.  On April 29, 2013, Plaintiff filed a Voluntary Petition for Chapter 7 Bankruptcy, in a matter styled In re Lanteri, No. 13-B-4494 (S.D. Ind.).   Among the creditors/debt collectors listed on Schedule F of Ms. Lanteri's bankruptcy petition was CPA for the debt she owed for cable services, see, excerpt of bankruptcy petition attached as Exhibit C.

22.  Accordingly, on May 2, 2013, CPA was sent, via electronic transmission, notice of the bankruptcy by the court, see, the Certificate of Service to the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines, which is attached as Exhibit D.

23.  The above-referenced notice from the Bankruptcy Court also notified all of Plaintiff's creditors that an automatic stay was in place for all collection actions against Plaintiff.

24.  Despite being barred from contacting Plaintiff, Defendants contacted Plaintiff on May 23, 2013 via SMS Text Message to Plaintiff's cellular telephone number in

an attempt to collect a debt, see, screenshot of May 23, 2103 text message, attached as Exhibit E.

25.     CPA's text message was sent using an SMS short code, and was not sent from a traditional telephone number, which indicates that the text messages were sent from an automated system designed to send text messages en masse.

26.     CPA's text communication instructed Plaintiff that she could opt-out of receiving future text communications from CPA by replying "STOP".

27.     On May 23, 2013, as provided for by the TCPA, Ms. Lanteri revoked any alleged consent that she had given by responding to the Defendants' a text message with the message "STOP", see, attached Exhibit E.  In re SoundBite Communications, Inc., --- FCC Rcd. ----, No. 02-278, 2012 WL 5986338 (Nov. 29, 2012).

28.     Despite the automatic stay preventing Defendants from calling plaintiff and despite plaintiff revoking consent, CPA continued to call and text plaintiff in attempts to collect the debt.

29.     On May 24, 2013, May 25, 2013 and May 28, 2013, CPA placed telephone calls to Plaintiff's cellular telephone number in an attempt to collect the debt.

30.     On June 24, 2013, CPA sent a second text message to Plaintiff's cellular telephone in an attempt to collect the debt, see, screenshot of June 24, 2103 text message, attached as Exhibit F.

31.     On June 25, 2013, CPA placed a telephone call to Plaintiff's cellular telephone number in an attempt to collect the debt.

32.     On July 17, 2013 and July 18, 2013, CPA placed pre-recorded calls to Plaintiff's cellular telephone number in an attempt to collect the debt.

**COUNT I**
**Violation Of The TCPA Via Improper**
**Phone Calls And Text Messages To Cellular Phones**

33. Plaintiff adopts and realleges ¶¶ 1-32.

34. The telephone calls and texts from Defendants to Plaintiff's cellular telephone number were made using a pre-recorded voice or an ATDS, as defined by 47 U.S.C. § 227 (a)(1), as it had the capacity to store or produce numbers randomly or sequentially, and to dial such numbers, to place telephone calls and/or SMS or text messages to Plaintiff's cellular telephone.

35. Over the course of the putative class period, Defendants and its agents directed the mass transmission of pre-recorded messages and text messages to cell phones nationwide.

36. The telephone number that Defendants, or their agents, sent the text messages to were assigned to cellular telephone services for which Plaintiff incurred a charge for incoming calls or text messages, pursuant to 47 U.S.C. § 227(b)(1).

37. These telephone text messages constituted "calls" under the TCPA that were not for emergency purposes, as defined by 47 U.S.C. § 227 (b)(1)(A)(i).

38. Defendants made unsolicited telephone calls to the wireless telephone number of plaintiff and the other members of the class with pre-recorded voices and or using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

39. These phone calls were made without the prior express consent of plaintiff or the class or were made after any such consent had been revoked.

40. Defendants have therefore violated the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii),

which makes it unlawful for any person within the United States "... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... ".  As a result of Defendants' illegal conduct, the members of the class suffered actual damages and, under § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500.00 in damages for each such violation of the TCPA.

41. Plaintiff and class members are also entitled to, and do, seek injunctive relief prohibiting Defendants' violations of the TCPA in the future.

### COUNT II
### Violations Of The FDCPA Via Improper Collection Calls And Text Messages, Attempting To Collect A Debt Included In A Bankruptcy From A Consumer Represented By Counsel

42. Plaintiff adopts and realleges ¶¶ 1-32.

43. Section 1692e of the FDCPA prohibits a debt collector from using any false and/or any deceptive or misleading representation or means in connection with the collection of a debt, including, but not limited to, the false representation of the character, amount or legal status of any debt, see 15 U.S.C. § 1692e(2)(A). Demanding payment of a debt that is no longer owed, due to a bankruptcy, constitutes the use of false and/or deceptive or misleading representations or means in connection with the collection of a debt, in violation of § 1692e of the FDCPA, see, Randolph, 368 F3d at 728-730.

44. Defendants, by continuing to attempt to collect a debt from Plaintiff which was subject to her bankruptcy, via telephone calls and text messages to her cell phone, used false and/or deceptive or misleading means to attempt to collect a debt, in violation of § 1692e of the FDCPA.

45. Moreover, § 1692c(c) of the FDCPA prohibits a debt collector from

communicating with a consumer after a direction to cease communications, and from continuing to demand payment of a debt that the consumer has indicated that they refuse to pay.   See, 15 U.S.C. § 1692c(c).

46.	Here, the bankruptcy and the notice issued by that court (Exhibit D) told Defendants to cease communications and cease collections.   By continuing to communicate regarding this debt and demanding payment, Defendants violated § 1692c(c) of the FDCPA.

47.	Additionally, § 1692c(a)(2) of the FDCPA prohibits a debt collector from communicating with a consumer if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, see, 15 U.S.C. § 1692c(a)(2).

48.	Defendants were given direct, written notice, through Plaintiff's bankruptcy, that Plaintiff was represented by an attorney in connection with her debts. Accordingly, Defendants were aware of Plaintiff's bankruptcy before it made the collection phone calls and texts. By continuing to call and text Plaintiff directly, despite direct, written notice that she was represented by counsel, Defendants violated § 1692c(a)(2) of the FDCPA.

49.	Defendants' violations of the FDCPA render them liable for statutory damages, costs, and reasonable attorneys' fees.   See, 15 U.S.C. § 1692k.

## CLASS ALLEGATIONS

50.	Plaintiff Lanteri, individually and on behalf of all other similarly situated, brings, the above claim on behalf of a Class and four Sub-Classes. The TCPA Class consists of:

> (1) All persons in the United States (2) to whose cellular telephone number (3) Defendants placed a non-emergency telephone call (4) using an automatic

10

telephone dialing system or an artificial or prerecorded voice (5) within 4 years of the complaint (6) where Defendants did not have express consent to call said cellular telephone number OR where consent had been revoked for any such calls.

The TCPA Stop Text Sub-Class consists of:

(1) All persons in the United States (2) to whose cellular telephone number (3) Defendants placed a non-emergency telephone call via text message (4) using an automatic telephone dialing system (5) within 4 years of the complaint (6) where the person previously replied to a text from Defendants with the message Stop.

The TCPA Bankruptcy Stay Sub-Class consists of:

(1) All persons in the United States (2) to whose cellular telephone number (3) Defendants placed a non-emergency telephone call (4) using an automatic telephone dialing system or an artificial or prerecorded voice (5) within 4 years of the complaint (6) during the period of an automatic stay from a Bankruptcy Court.

The TCPA Cease Communication Represented By Attorney Sub-Class consists of:

(1) All persons in the United States (2) to whose cellular telephone number (3) Defendants placed a non-emergency telephone call (4) using an automatic telephone dialing system or an artificial or prerecorded voice (5) within 4 years of the complaint (6) where Defendants received written notice that the person was represented by an attorney and to cease communication.

The FDCPA Sub-Class consists of:

(1) All persons in the United States (2) to whose cellular telephone number (3) Defendants placed a non-emergency telephone call (4) using an automatic telephone dialing system or an artificial or prerecorded voice (5) within 1 year of the complaint (6) while that person's debt was subject to or discharged in a bankruptcy or was subject to a notice of attorney representation, or was subject to a cease communication request.

51.     Plaintiff represents and is a member of the Class and the Sub-Classes. Excluded from the Class and Sub-Classes are Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the Judge to whom this action is assigned and any member of the Judge's staff and immediate family, and claims for personal injury, wrongful death and/or emotional distress.

52. Plaintiff does not know the exact number of members in the Class and Sub-Classes, but based upon the size and national scope of Defendants' business, as well as its creditor client, along with the nature of the message campaign to plaintiff, plaintiff reasonably believes that class members number at minimum in the hundreds if not thousands.

53. Plaintiff and all members of the class and sub-class have been harmed by the acts of Defendants.

54. This Class Action Complaint seeks money damages and injunctive relief.

55. The joinder of all class members is impracticable due to the size and relatively modest value of each individual claim. The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits. The class can be identified easily through records maintained by Defendants.

56. There are questions of law and fact common to the members of the class and sub-class, which common questions predominate over any questions that affect only individual class members. Those common questions of law and fact include, but are not limited to:

    a. Whether the Defendants engaged in a pattern of using automated equipment or pre-recorded voices to place calls to cellular telephones;

    b. Whether the Bankruptcy Court's Automatic Stay and/or the Discharge Injunction revoked consent for any calls to be placed to cellular telephone numbers;

    c. Whether Defendants ignored stop texting messages that revoked

        consent;

    d.    Whether the Defendants thereby violated the TCPA;

    e.    Whether Defendants ignored notices of consumer's bankruptcy filings or attorney representation and/or cease communications and instead kept calling and texting those consumers; and,

    f.    Whether Defendants thereby violated the FDCPA.

57.    As a person who received numerous and repeated telephone calls using an automatic telephone dialing system or an artificial or prerecorded voice, without her prior express consent within the meaning of the TCPA, and during the period of the Automatic Bankruptcy stay, plaintiff asserts claims that are typical of the members of the class member and each sub-class. Plaintiff will fairly and adequately represent and protect the interests of the class and sub-classes, and has no interests which are antagonistic to any member of the class or sub-classes.

58.    Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes such as the TCPA and the FDCPA.

59.    A class action is the superior method for the fair and efficient adjudication of this controversy. Class-wide relief is essential to compel Defendants to comply with the TCPA and FDCPA. The interest of class members in individually controlling the prosecution of separate claims against Defendants is small because the statutory damages in an individual action for violation of the TCPA and FDCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the class

members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

  60. Defendants have acted on grounds generally applicable to the class and sub-classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the class as a whole appropriate. Moreover, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

  WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff, the Class and sub-classes and against Defendants for:

  A. Statutory damages pursuant to 47 U.S.C. § 227(b)(1);

  B. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

  C. An award of attorneys' fees and costs to counsel for Plaintiff and the Class;

  D. Statutory damages pursuant to 15 U.S.C. § 1692k, along with reasonable attorneys' fees and costs;

  E. Such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff, Katherine Lanteri, individually and on behalf of all others similarly situated, demands trial by jury.

          Katherine Lanteri, individually and on behalf of all others similarly situated,

          By: /s/ David J. Philipps
          One of Plaintiff's Attorneys

Dated:   September 18, 2013

David J. Philipps           (Ill. Bar No. 06196285)
Mary E. Philipps            (Ill. Bar No. 06197113)
Angie K. Robertson          (Ill. Bar No. 06302858)
Philipps & Philipps, Ltd.
9760 South Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900
(708) 974-2907 (FAX)
davephilipps@aol.com
mephilipps@aol.com

Keith J. Keogh             (Ill. Bar No. 06257811)
Timothy Sostrin            (Ill. Bar No. 6290807)
Keogh Law, Ltd.
55 West Monroe Street
Suite 3390
Chicago, Illinois 60603
(312) 726-1092
(312) 726-1093 (fax)
Keith@KeoghLaw.com

Steven J. Halbert          (Ind. Bar No. 14254-02)
11805 N. Pennsylvania Street
AmeriCenters Building
Carmel, Indiana 46032
(317) 706-6762
(317) 706-6763 (FAX)
shalbertlaw@aol.com