UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KATHERINE LANTERI, individually, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No. 1:13-cv-1501-WTL-MJD ) |
| CREDIT PROTECTION ASSOCIATION L.P., et al, | ) ) ) ) |
| Defendants. | ) |

## ENTRY ON MOTION TO CERTIFY CLASS AND RELATED MOTIONS

This cause is before the Court on the Plaintiff's Second Amended Motion to Certify Class (Dkt. No. 138); the Defendants' Motion for Leave to File Oversize Brief (Dkt. No. 154); and the Defendants' Motion for Leave to File Surreply (Dkt. No. 158). The motions are fully briefed. The Defendant's motion for leave to file an oversized brief is **GRANTED**. Their motion for leave to file a surreply is **GRANTED**, and the Court rules as follows regarding the Plaintiff's Second Amended Motion to Certify Class.

The Plaintiff alleges that the Defendants violated the Telephone Consumer Protection Act ("TCPA") by continuing to send text messages to her cellular telephone number regarding a debt after she replied "stop" when instructed to reply "STOP" to opt out from receiving further text messages and by contacting her while the debt was subject to an automatic stay order of a bankruptcy court. She moves the Court to certify two TCPA classes: a TCPA Stop Texting Class and a TCPA Bankruptcy Class. The Plaintiff proposes the following class definitions:

TCPA Stop Texting Class

(1) All persons within the United States (2) to whose cellular telephone number (3) CPA sent a text message in an attempt to collect an alleged debt (4) using its vendor,

>RingClear (5) within four years of September 8, 2013 (6) where the cellular phone owner previously replied to the text message with the message to stop, which includes, but is not limited to: (a) "STOP TEXT"; (b) "STOP CALLIN"; (c) "STOP SENDIN'"; (d) "PLEASE STOP"; (e) "PLZ STOP"; (f) the first 2 letters of the message "RE" followed by 2 non-alpha characters, followed by the exact phrase "STOP" (such as "RE:|Stop").
>
>TCPA Bankruptcy Class
>
>(1) All persons within the United States (2) to whose cellular telephone number (3) CPA called in an attempt to collect an alleged debt (4) using its vendor LiveVox (5) within four years of September 8, 2013 (6) during a period of an automatic stay as ordered from a Bankruptcy Court, or after the alleged debt was discharged in a Bankruptcy.

Dkt. No. 138 at 1-2.

The Plaintiff further moves the Court to appoint the Plaintiff as class representative and appoint Steven Halbert, Keith Keogh, and David Philipps as counsel for the classes. *Id.* at 2.

Federal Rule of Civil Procedure 23(a) describes the prerequisites for a class action, requiring the following conditions for certification:

> (1) the class is so numerous that joinder of all members is impracticable (numerosity);
> (2) there are questions of law or fact common to the class (commonality);
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and
> (4) the representative parties will fairly and adequately protect the interests of the class (adequacy of representation).

*Blow v. Bijora, Inc.*, 855 F.3d 793, 806 (7th Cir. 2017) (citing Fed. R. Civ. P. 23(a)). "When certification is sought under Rule 23(b)(3), as it is here, proponents of the class must also show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010)); *see also Blow*, 855 F.3d at 806 (citing Fed. R. Civ. P. 23(a) and *Bell v. PNC*

*Bank, Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015)). The Court is required to conduct "a rigorous analysis" to determine whether the prerequisites of Rule 23(a) have been satisfied: "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160-61 (1982); *see also Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) (citing *Falcon* and stating that the sentiment is "equally true of Rule 23(b)"). Further, this Court has broad discretion in determining whether certification is appropriate, *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (citation omitted), and may "probe behind the pleadings before coming to rest on the certification question," *Falcon*, 457 U.S. at 160.

The Seventh Circuit also recognizes and applies to all class actions "an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Under this so-called ascertainability requirement, class definitions fail if they are "too vague or subjective."[1] *Id.*

## I. TCPA STOP TEXTING CLASS

The Court addresses the Plaintiff's TCPA Stop Texting Class first. This class fails to meet the ascertainability requirement because it is impermissibly vague. As the Court noted in its entry on the Plaintiff's prior amended motion for class certification, one class proposed by the Plaintiff "refers to replying to a text message 'with the message to stop.'" Dkt. No. 137 at 4. The Plaintiff again uses this language in the currently proposed TCPA Stop Texting Class. *See* Dkt. No. 138 at 1. As the Court noted previously, such language is vague and ambiguous, and it

---

[1] A class definition will also fail if it creates a fail-safe class. *Id.* The Court acknowledges that the Defendants argue that each of the Plaintiff's proposed classes create fail-safe classes, *see* Dkt. No. 153 at 7-10, but it does not find the classes to be fail safe.

3

remains so in the current TCPA Stop Texting Class definition. Although the Plaintiff specifies several text message variations in the proposed class, she does not limit the class to those who replied with those specific text messages. Instead, she includes those who "replied to the text message with the message to stop, which includes, but is not limited to" those specified text messages. *Id.* The TCPA Stop Texting Class definition is too vague to identify a particular group of individuals and, for that reason, does not meet the ascertainability requirement. For this reason alone, the TCPA Stop Texting Class fails.

This failure, however, is not reason enough to avoid certifying the class. In the instance where a class definition is not ascertainable because it creates a fail-safe class, the Seventh Circuit suggests that the "problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at 825. The same could be said where ascertainability is not met because the class definition is impermissibly vague, as long as the proposed class meets the other Rule 23 requirements. For this reason, the Court removes the impermissibly vague text and proceeds in analyzing the other requirements, examining the following refined TCPA Stop Texting Class:

> (1) All persons within the United States (2) to whose cellular telephone number (3) CPA sent a text message in an attempt to collect an alleged debt (4) using its vendor RingClear (5) within four years of September 8, 2013, (6) where the cellular phone owner previously replied to the text message with one of the following text messages: (a) "STOP TEXT"; (b) "STOP CALLIN"; (c) "STOP SENDIN"; (d) "PLEASE STOP"; (e) "PLZ STOP"; or (f) the first 2 letters of the message "RE" followed by 2 non-alpha characters, followed by the exact phrase "STOP" (such as "RE:|STOP").

Although the Defendants state that the Plaintiff "fails to establish the four elements required under Rule 23(a)," they do not address numerosity at any length.[2] For the sake of this Entry, the Court assumes that numerosity is met and turns to the other Rule 23 requirements.[3]

## A.     Commonality

The Defendants argue that the Plaintiff has failed to show that she satisfies the commonality requirement because she does not provide evidence of common answers to the issues presented. Dkt. No. 153 at 19. Commonality requires a "common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). To satisfy commonality, the Plaintiff must show that the Plaintiff and class members "share some question of law or fact that can be answered *all*

---

[2] The Defendants make several arguments against class certification. While the Court has examined all of the arguments, it discusses only those necessary for reaching its conclusions in this Entry.

[3] Before addressing the remaining elements, the Court discusses the Defendants' standing argument. The Defendants argue that, in light of the decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), the Plaintiff lacks standing to bring claims for violation of the TCPA. However, the Plaintiff has alleged that "[t]he telephone number that Defendants, or their agents, sent the text messages to were assigned to cellular telephone services for which Plaintiff incurred a charge for incoming calls or text messages, pursuant to 47 U.S.C. § 227(b)(1)," and that she "suffered actual damages." Compl. ¶¶ 36 & 40, respectively. Even if she did not incur charges, unlike the statute at issue in *Spokeo*, "section 227 of the TCPA prohibits making certain kinds of telephonic contact with consumers without first obtaining their consent." *Aranda v. Caribbean Cruise Line, Inc.*, 202 F. Supp. 2d. 850, 857 (N.D. Ill. 2016). "It directly forbids activities that by their nature infringe the privacy-related interests that Congress sought to protect by enacting the TCPA." *Id.* The Court agrees that, even in situations where a person consented to receive texts or calls and then later revoked that consent, the receipt of an unwanted text or call is a sufficient injury to satisfy Article III. *United States v. Dish Network, LLC* --- F. Supp. 3d. ----. 2017 WL 2427297, at *3 (C.D. Ill. June 5, 2017) (collecting, from many circuits, cases that reach the same conclusion). The Court acknowledges the Defendants' point — that the Plaintiff's potential recovery likely vastly exceeds the economic injury suffered — but the fact remains that she has standing. *See* Dkt. No. 158-1 at 4. And, as Judge Posner so eloquently put it: "Anyway, the statute, with its draconian penalties . . . , is what it is." *Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 915 (7th Cir. 2011).

5

*at once* and that the *single answer* to that question will resolve a central issue in all class members' claims." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012) (emphasis in original). "[S]uperficial common questions—like whether each class member . . . 'suffered a violation of the same provision of law'—are not enough." *Id.* (quoting *Wal–Mart Stores, Inc.*, 564 U.S. at 350). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (citations omitted).

The Plaintiff argues that commonality is satisfied because "[a]ll of the Class members suffered the same injury. Defendants' systems contacted them on their cellular telephone[s] about [] alleged debt[s] . . . after their consent[s] had been revoked." Dkt. No. 150 at 7. With this statement, the Plaintiff merely alleges that all class members have suffered a violation of the same provision of law. That, as the Supreme Court said in *Wal–Mart Stores, Inc.*, is not the type of common question required for certification and thus cannot be relied upon by the Plaintiff to support certifying the TCPA Stop Texting Class.

The Plaintiff presents two additional questions it believes are common to the TCPA Stop Texting Class, which the Defendants dispute. *See* Dkt. Nos. 150 at 8 and 158-1 at 18, respectively. The Court need only evaluate the first of these: whether an automated telephone dialing system was used to send the text messages. This question is common to all call recipients, and the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal–Mart Stores, Inc.*, 564 U.S. at 350. "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359 (internal quotations omitted). For this reason, the TCPA Stop Texting Class meets the commonality requirement.

### B. Typicality

Typicality means that "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. The Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). "[T]he requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (internal quotation marks and citations omitted). "A class is disserved if its representative's claim is not typical of the claims of the class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011). Where the Plaintiff's claim "involves facts that distinguish her claim from the claims of her fellow class members," typicality is lacking. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009).

Facts distinguish the Plaintiff's claim from that of the TCPA Stop Texting Class members, leaving them without the same essential characteristics. In response to the Defendants' text messages, the TCPA Stop Texting Class members sent one of six text messages in reply. The Plaintiff did not send one of the six text messages listed in the TCPA Stop Texting Class definition. Instead, the Plaintiff sent a text message to the Defendants that said, "stop." Like the Plaintiff's text message, none of the six messages comply perfectly with the opt-out instruction requesting that individuals reply "STOP" to opt out of receiving text messages.[4] Because none of the messages comply with the opt-out instruction, whether an individual revoked consent to receive text messages becomes an issue central to liability in this case.

---

[4] The Defendants imply that sending the text message "stop" did comply with the opt-out instructions because such a response was "not recognized as an opt-out 'STOP' request." Dkt. No. 153 at 32.

The FCC has stated that "[c]onsumers have a right to revoke consent, using any reasonable method." *Federal Communications Commission Record*, F.C.C. 15-72, 23, *appeal docketed as ACA Int'l v. FCC*, No. 15-1211 (D.C.C. July 13, 2015). The Court, then, must determine whether each of the text messages listed in the TCPA Stop Texting Class definition and the message sent by the Plaintiff constitute revocations of consent. For this reason, revocation of consent will not be proved or disproved on evidence and theories applicable to the proposed class as a whole. Rather, whether revocation occurred in each instance depends on whether a particular text message is a reasonable revocation. *See, e.g.*, *Epps v. Earth Fare, Inc.*, No. CV-16-8221-SJO (SSx), 2017 WL 1424637, at *5 (C.D. Cal. Feb. 27, 2017) (finding that plaintiff did not plausibly alleged that her revocation was effective when, "[w]ithout explanation, Plaintiff ignored Defendant's clear" opt-out instructions and instead sent five non-compliant text messages). To make those determinations, the Court would be required to examine facts related to the Plaintiff's reply message, as well as to each of the six text messages individually, and the Court will not analyze the merits of the case here.[5] *See Messner*, 669 F.3d at 811 ("[T]he court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits") (citations omitted).

Because it is not clear that each of the messages revoked consent, the Plaintiff's claim and the claims of the individuals who sent each of the six text messages are distinct from one another and do not have the same essential characteristics. For these reasons, the Plaintiff's claims are not typical of the claims of individuals who sent the six text message variations listed

---

[5] Delving into the issue of whether revocation occurred would require an examination of FCC guidance that is under review in the United States Court of Appeals for the District of Columbia at this time. *See Federal Communications Commission Record*, F.C.C. 15-72, *appeal docketed as ACA Int'l v. FCC*, No. 15-1211 (D.C.C. July 13, 2015).

in the TCPA Stop Texting Class definition. Moreover, without the broad language of the TCPA Stop Texting Class definition, the Plaintiff and other individuals who sent text messages that simply contained the single-word reply "stop" are not even included in the proposed class. As a result, typicality is lacking.

### C. Adequacy of Representation

Similar issues thwart the Plaintiff's showing of adequacy of representation. The adequacy of representation requirement focuses on the quality of the Plaintiff to serve as the named representative: It requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). This requirement "is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quoting *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986)). Without addressing whether counsel for the Plaintiff is adequate, the Plaintiff herself is not capable of representing the interests of the proposed TCPA Stop Texting Class because, again, without the broad and vague language in the proposed TCPA Stop Texting Class definition, she is not a member of the class she defined. That is, she did not send one of the text messages listed in the TCPA Stop Texting Class definition. This difference disqualifies her as an adequate class representative.

### D. Predominance

Ordinarily, the Court would "only turn [its] attention to Rule 23(b) after [being] certain that all of Rule 23(a)'s requirements had been met." *Bell*, 800 F.3d at 374. Nonetheless, the Court quickly addresses Rule 23(b)'s predominance requirement. "[T]he predominance criterion is far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v.*

9

*Windsor*, 521 U.S. 591, 624 (1997). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). There are inherent dissimilarities between the named Plaintiff and the individuals included in the TCPA Stop Texting Class definition. Specifically, the Plaintiff sent a completely different text message that is not included in the listed text messages in the class definition. As a result, the Plaintiff has failed to demonstrate that common questions of law or fact predominate over questions affecting individual class members, or at the very least, over questions affecting the Plaintiff apart from each of the six groups of individuals who sent the text messages listed in the TCPA Stop Texting Class definition.

For all of the above reasons, the Court **DENIES** the Plaintiff's motion to certify the TCPA Stop Texting Class.

## II. TCPA BANKRUPTCY CLASS

The Plaintiff also seeks to certify the following class:

> (1) All persons within the United States (2) to whose cellular telephone number (3) CPA called in an attempt to collect an alleged debt (4) using its vendor LiveVox (5) within four years of September 8, 2013 (6) during a period of an automatic stay as ordered from a Bankruptcy Court, or after the alleged debt was discharged in a Bankruptcy.

Dkt. No. 138 at 1-2. The Plaintiff argues that "the Plaintiff is a member of the [TCPA Bankruptcy] Class as it is actually defined," and that "each putative class member's filing of bankruptcy, a matter of public record, is the manner of revocation for everyone in that Class." Dkt. No. 150 at 11-12. Again, the Court does not address the numerosity requirement, but assumes it is met, because the Defendants have not addressed it.[6] As with the TCPA Stop

---

[6] The Court acknowledges that the Defendants discuss a method for identifying individuals to be included in the TCPA Bankruptcy Class in their brief section addressing the need for individualized inquiries. *See* Dkt. No. 153 at 28-29. They do not, however, indicate that the class fails to meet the numerosity requirement.

Texting Class, the commonality requirement is met through the common question of whether an automated telephone dialing system was used to contact putative class members.

Typicality, however, is not met because the Plaintiff has not shown that she was called "after the alleged debt was discharged in a Bankruptcy." Dkt. No. 138 at 2. The Plaintiff obtained a discharge of her bankruptcy on August 20, 2013. Dkt. No. 153 at 4. Notice was sent to Credit Protection Association, L.P. *Id.* The Plaintiff did not receive any calls (or texts) from the Defendants after that time. *See* Compl. ¶¶ 29-32. For this reason, the Plaintiff's claim does not have the same essential characteristics as the claims of the class at large. *Oshana*, 472 F.3d at 514. The fact that some putative class members received calls after their debts were discharged in bankruptcy distinguishes their claims from the Plaintiffs. As a result, typicality is lacking. *Muro*, 580 F.3d at 492. For the same reasons, the Plaintiff is not an adequate representative of the class as defined. She is not a member of a class of individuals who received calls after their bankruptcies were discharged, and thus cannot adequately represent their interests as a class. Accordingly, the Court **DENIES** the Plaintiff's motion to certify the TCPA Bankruptcy Class.

### III.     ALTERNATIVE CLASSES

In this case, the class definitions each define a class to which the Plaintiff does not belong or only belongs in part. As such, the class definitions are overbroad. Although class actions are "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013), class certification, in some circumstances, has been deemed "normal in litigation under § 227," *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013), and could be appropriate in this matter as well. Rule 23(c)(4)(B) allows that "[w]hen appropriate . . . a class may be divided into

subclasses and each subclass treated as a class, and the provisions of this rule shall then be construed and applied accordingly."[7] Fed. R. Civ. P. 23(c)(4)(B). Furthermore, the Seventh Circuit has instructed district courts to craft classes for plaintiffs where the class definition presented is either overbroad or creates a fail-safe class. *See Messner*, 669 F.3d at 825 ("Either problem can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis.") The class definitions in this matter could be refashioned to create classes that may meet the Rule 23 requirements.

Specifically, the Court believes that the Plaintiff might be an adequate representative of the following classes:

Stop Class

(1) All persons within the United States (2) to whose cellular telephone number (3) Credit Protection Association, L.P. sent a text message in an attempt to collect an alleged debt (4) using its vendor RingClear (5) within four years of September 8, 2013, (6) where the cellular phone owner previously replied to the text message with the one-word reply "stop" in any combination of capital and lowercase letters.

Bankruptcy Class

(1) All persons within the United States (2) to whose cellular telephone number (3) Credit Protection Association, L.P. called in an attempt to collect an alleged debt (4) using its vendor LiveVox (5) within four years of September 8, 2013, (6) during a period of an automatic stay as ordered from a Bankruptcy Court.

Without additional information, however, the Court cannot make a determination on certification of these proposed classes.[8] Should the Plaintiff seek to certify the Court-proposed

---

[7] The Court does not propose dividing the TCPA Stop Texting Class into six subclasses based on the text message sent or the TCPA Bankruptcy Class into two subclasses based on whether a stay or discharge order existed because the Plaintiff would not be included in any of the TCPA Stop Texting subclasses or one of the TCPA Bankruptcy subclasses and therefore, could not adequately represent those subclasses.

[8] The Court notes that the Plaintiff cites to Exhibit 2 ¶ 18 (Dkt. No. 150-2) in her brief. That paragraph states that "The records show that 10,197 of the 11,125 messages [were] sent after a 'stop' message consisting solely of the content 'Stop', 'STOP', 'stop', or 'STOP ALL'[.]" Dkt. No. 150-2 at 8. The paragraph includes a footnote instructing the reader to "[s]ee the first

classes, she should file a new motion for class certification **within 21 days of the date of this Entry**. In a brief accompanying any such motion, the Plaintiff must provide information regarding numerosity, commonality, typicality, adequacy of representation, predominance, and superiority separately for each of the proposed classes. The same should be true of the Defendants' responsive briefing as well: In addition to any other arguments it seeks to make regarding the proposed classes, the Defendants must, separately for each of the proposed classes, provide information responding to each Rule 23(a) requirements, as well as the predominance and superiority requirements. The Court will not review previous filings in making a determination regarding any new motion for class certification. Therefore, all arguments for or against certification of the Court-proposed classes must be included in the briefs supporting or responding to any newly filed motion. Additionally, the Court advises counsel to comply with the local rules governing briefing, including Local Rules 5-1, 5-6, and 7-1.

To reiterate, the Defendants' Motion for Leave to File Oversize Brief (Dkt. No. 154) and Motion for Leave to File Surreply (Dkt. No. 158) are **GRANTED**. The Plaintiff's Second Amended Motion to Certify Class (Dkt. No. 138) is **DENIED**. Should the Plaintiff seek to certify the classes proposed by the Court, she must file a new motion for class certification **within 21 days of the date of this Entry**.

    SO ORDERED: 8/22/17

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

four rows of Exhibit 1." *Id.* Exhibit 1 includes four replies that say, "RE:|Stop----------FREEMSG: Please return unused equip to C." It is not clear whether these replies involved text messages attempting to collect a debt, which is part of the class definitions. The Plaintiff should ensure that it identifies only those responses to text messages sent in an attempt to collect an alleged debt.

Copies to all counsel of record via electronic notification