## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF INDIANA
## INDIANPOLIS DIVISION

| | | |
|---|---|---|
| Katherine Lanteri, individually and on behalf of all others similarly situated | ) ) ) | No.  1:13-cv-01501-WTL-MJD |
| Plaintiff | ) ) ) | |
| v. | ) ) | |
| Credit Protection Association, L.P., a Texas limited partnership, and ETAN General, Inc., a Texas corporation | ) ) ) ) | |
| Defendants | ) | |

## PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
## THIRD AMENDED MOTION FOR CLASS CERTIFICATION

Defendants' records establish that the stop class and bankruptcy class each satisfy Rule 23. It is undisputed the class definitions are not vague, overbroad or fail-safe, it is undisputed the classes are sufficiently numerous, the Court already found Rule 23's commonality requirement met (Dkt. 164 at 6, 10-11), Defendants do not identify any material individual issue that could predominate, and Plaintiff's showing that a class action is superior is largely uncontested.

Defendants' re-raise arguments this Court's prior orders already reject, they repeat theories that are irrelevant under the class definitions suggested by the Court, and they cite cases that are contrary to current authority. However, none of their arguments obscure the fact that both classes easily satisfy the requirements of Rule 23. This motion should be granted.

## I.      The Court Already Rejected Defendants' Argument that Plaintiff Lacks Standing

Defendants concede the Court rejected their standing argument, and claim they "do not seek a re-evaluation of that ruling." (Dkt. 177 at 5). That decision remains well-supported, including by cases after the Court's decision. (Dkt. 164 at 5, fn.3 ("the receipt of an unwanted text or call is a sufficient injury to satisfy Article III."); and *see Mays v. Credit One Bank*, 2017 U.S. Dist. LEXIS 141729, *4-*6 (S.D. Ind. Sept. 1, 2017) (rejecting the *Romero*[1] case Defendants cite).

## II.     There Is No Heightened Burden of Proof for Class Certification

Class certification is the norm in TCPA cases (*Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013)), and this case should be no different. Defendants argue class actions are an exception to the "usual rule" of individual litigation, citing, *Comcast v. Behrend*, 133 S.Ct. 1426, 1432 (2013), but the case *Comcast* cites for this observation only makes it to explain why the statute at issue in that case was written in the singular instead of the plural. *See*

---

[1] The Ninth Circuit effectively overruled *Romero* and held the receipt of unwanted calls is a concrete injury. *See Van Patten v. Vertical Fitness Group*, 847 F.3d 1037, 1043 (9th Cir. 2017).

1

*Califano v. Yamasaki*, 442 U.S. 682, 700-701 (1979)). In fact, *Califano* holds "the Rule 23 class-action device was *designed to allow* an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Id.* (emphasis added).[2]

## III. The Stop Classes Meet the Rule 23(a)(1)-(3) and the Predominance Requirement

### A.    Stop Texting Class Is Ascertainable

Rule 23 requires that a class be "ascertainable," *i.e.* clearly defined based on objective criteria, and not "fail-safe." *See Mullins v. Digital Direct, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). This Court already found Plaintiff's proposed stop and bankruptcy classes are not fail-safe (Dkt. 164 at 3, fn.1), but suggested revised definitions to resolve vagueness/breadth issues, and invited Plaintiff to file a new motion using the revised definitions. (*Id.* at 4). Consistent with the Court's suggestion, Plaintiff filed a new motion with the class definitions the Court proposed, plus one proposed alternative for the stop class in response to Defendants' opposition. (Dkt. 170 at 4). It is undisputed that the new definitions are not vague, overbroad or fail-safe.

However, Defendants claim the new stop classes are not ascertainable because allegedly Plaintiff will have difficulty "identifying" some members. This claim is contrary to fact, as Defendants' records contain name and contact information,[3] plus it ignores binding authority that an alleged difficulty identifying class members is ***not*** an ascertainability issue. *See Mullins*, 795

---

[2] Defendants also repeat that a "rigorous analysis" is required, but this just means the Court may not rely on assumptions that Rule 23's requirements are met. *See Averett v. Metalworking Lubricants Co.*, 2017 U.S. Dist. LEXIS 158184, *9 (S.D. Ind. Sept. 27, 2017). Plaintiff does not ask the Court to assume anything. She *proves* the requirements are met, as further shown below.

[3] Defendants' records identify class members because they include the phone number called, the call date, the account identifier, the name and other personal identifiers of the persons to whom the texts and calls were made. (Dkt. 170 at 8-9, citing Biggerstaff Rep. at ¶28). Importantly Defendants only claim difficulty identifying which members are "wrong party" text recipients, which is a non-issue because there is no evidence that any class member was a wrong party.

F.3d at 659 (ascertainability means "the adequacy of the class definition itself," not "whether, given an adequate class definition, it would be difficult to identify particular members of the class.").[4] Difficulty identifying class members goes to Rule 23(b)(3)'s superiority requirement, and then only if the circumstances are "unusually difficult" (which Defendants have not shown). *See Mullins*, 795 F.3d at 672. It is irrelevant to the ascertainability requirement, which is met.

## B.      Defendants Do Not Present a Basis to Dispute Numerosity – Rule 23(a)(1)

Defendants admit they do not "separately" dispute numerosity or that joinder is impracticable, as required by Federal Rule 23(a)(1). (*See* Dkt. 177 at 23). As such, numerosity is met because the stop class contains thousands of members. (Dkt. 170 at 9-10); and *see Smith v. Dearborn County*, 244 F.R.D. 512, 517 (S.D. Ind. 2007) (40 members is sufficient).

## C.      The Stop Classes Presents Common Contentions – Rule 23(a)(2)

Commonality only requires that a class present at least one "'common contention' that is 'capable of classwide resolution' because the 'determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.'" *Mullins*, 795 F.3d at 673, quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Court already found this requirement met because the stop class presents the common contention that "an automated telephone dialing system was used to send the text messages" at issue. (Dkt. 164 at 6, and 10-11); *see also Melito v. Am. Eagle Outfitters*, 2017 U.S. Dist. LEXIS 146343, *23 (S.D.N.Y. Sept. 8, 2017) ("The central issues in this case are whether the text messages were sent using an ATDS…"). Defendants do not dispute that the stop class presents this common contention.

---

[4] All of the cases Defendants cite from this circuit to support their ascertainability arguments are district court cases that pre-date *Mullins*. (Dkt. 177 at 6-8, citing *Bridgeview Health Care Ctr. v. Clark*, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011), *Pawelczak v. Financial Recovery Servs.*, 286 F.R.D. 381 (N.D. Ill. 2012), *Jamison, v. First Credit Servs., Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013) and *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508 (E.D. Wisc. 2014).

3

Instead, Defendants only dispute that the stop class meets Rule 23(a)(2) by claiming the stop class's second common contention is not common. This position is contrary to law because, as this Court ruled, the class need only present a single common contention. (Dkt. 164 at 6 ("[F]or purposes of Rule 23(a)(2) even a single common question will do."), quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350). Nevertheless, because commonality of the contentions affect Rule 23(b)(3)'s predominance requirement, below, Plaintiff addresses Defendants' arguments.

The stop classes present the additional common contention that return texting "stop" is a "reasonable method" of revoking consent, and thus that each text Defendants sent after receiving a "stop" response violates the TCPA. (Dkt. 170 at 12; *see also* Dkt. 164 (8/22/17 Order) at 8 ("The FCC has stated that "[c]onsumers have a right to revoke consent, using any reasonable method.") (citation omitted); and *In re Rules and Regs. Implementing the TCPA, Declaratory Ruling as to Petition of SoundBite Comms., Inc.,* 27 FCC Rcd. 15391, 15392, fn.12 (F.C.C. Nov. 26, 2012) (sending a stop text revokes consent). Defendants dispute this contention is common, but present no law or logic. Instead, they just declare it "haphazard" to have a class in which some members return texted "stop" (all lower case), whereas others wrote "stop" with one or more capital letters. But Defendants identify no material difference between "stop" and "Stop," which is no doubt why the Court suggested the class include all variations of the word "stop," regardless of case (so long as the text contains nothing else). (*See* Dkt. 164 at 12).

Defendants also claim there is no common answer because their vendor RingClear identified some return texts as opt-out requests and others as not being opt requests, and Plaintiff cannot show "how and why [Plaintiff] and others purportedly similar to her receive[d] texts." (Dkt. 177 at 19). These are non-issues. The "reason" the texts were sent is irrelevant because the TCPA "does not require proof of intent or motive." *United States v. Dish Network, LLC*, 256 F.Supp.3d

4

810, 2017 U.S. Dist. LEXIS 85543, *352 (C.D. Ill. 2017). Moreover, Defendants base their argument on texts that contain more than the word "stop", which are not part of the class. Defendants admit texts that contain anything more than the word "stop" fall beyond the class definition. (*See* Dkt. 170 at 4; and Dkt. 177 at 7 ("these persons are no longer included…")).

Finally, Defendants question Plaintiff's expert's most-recent report identifying stop class texts because Plaintiff's stop text is not listed. This argument is a disingenuous red herring. The reason Plaintiff's text is not listed is because Defendants inexplicably omitted Plaintiff's stop information from the class data they produced to Plaintiff's expert. (*See* Supplemental Biggerstaff Report at ¶4-¶6, attached as Exhibit 1).[5] Regardless, Defendants admit that Plaintiff, like the rest of the stop class members, return texted "stop" and still got texted again. (Dkt. 177 at 18 and Ex. J). In short, Mr. Biggerstaff's report is correct, and the issue of whether a "stop" return text revokes consent is another common contention that satisfies Rule 23(a)(2).

### D.    Common Issues Predominate for the Stop Class – Rule 23(b)(3)

Predominance is met when the "common questions represent a significant aspect of a case and ... can be resolved for all members of a class in a single adjudication. [citation]. Or, to put it another way, common questions can predominate if a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). This test is easily met because the Court already ruled that "whether an automated telephone dialing system was used to send the text messages … is **central** to the validity of each one of the claims …" (Dkt. 164 at 6) (emphasis added). Likewise,

---

[5] To avoid any doubt, Mr. Biggerstaff attached the PDF print out that Defendants separately sent showing Plaintiff's sent a text that only stated "stop." *Id*. In short, Defendants improperly removed Plaintiff's information from the class data and produced it as a pdf instead, and now they attempt to attack Plaintiff's expert based on their own improper actions.

the question of whether return texting the single-word "stop" is enough to revoke consent is critical because a "yes" means the subsequent texts to the class violate the TCPA. The resolution of both questions determines Defendants' liability to each class member.

These common contentions can be resolved in a single adjudication. It is undisputed that the ATDS issue turns on capabilities of the system RingClear used to text the class members, and it is undisputed that issue of whether return texting "stop" is sufficient to revoke consent is a pure questions of law. *See*, *e.g.*, *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271-72 (3d Cir. 2013) (holding as a matter of law that the calls after stop request were actionable under the TCPA). Accordingly, the stop class meets the predominance requirement.

Defendants claim the predominance requirement is not met because the stop class allegedly presents individual questions. Even if that were true, it does not defeat class certification because

> [i]ndividual questions need not be absent. The text of Rule 23(b)(3) itself contemplates that such individual questions will be present. The rule requires only that those questions not predominate over the common questions affecting the class as a whole.

*Messner*, 669 F.3d at 815. Regardless, Defendants do not identify material or relevant individual questions, let alone any that would dominate the common questions.

Defendants simply claim individual inquiries may be "possible" because the FCC holds a revocation of consent can be found based on the totality of the circumstances. This flips the FCC's holding on its head, defeating its purpose (which is to broaden the scope of consumer opt out rights, not prevent class actions). The FCC does not require individual inquiries about revocations of consent for their own sake.

Defendants' position is also contrary to the FCC's order in *In Re Soundbite*, which held a "stop" text is itself enough to revoke consent. *In re SoundBite*, 27 FCC Rcd. at 15392, fn.12. By definition, every stop class member did just that (and only that, because the class is limited to

persons whose texts say nothing else). (Dkt. 170 at 4). Thus, no further inquiry is needed. In any event, there is no evidence from which to make individual inquires. Only common evidence is available, consisting of Defendants' records showing the stop messages. (*See* Dkt. 170-2 (Biggerstaff Rep.) at 12). Defendants do not identify any other evidence. They just vaguely speculate some class members may have "typed 'stop' in differing manners and in unique circumstances" (Dkt. 177 at 26), which is irrelevant because the issue is whether texting class members after they send a "stop" text violates the TCPA, not how, when and why the "stop" text was sent. Thus, there is no individual issue, let alone one that could predominate.

Defendants also generically claim TCPA cases based on a revocation of consent necessarily present individual issues that predominate. This claim is wrong on both the facts and the law. *See Wilkes v. Caresource Mgmt. Grp. Co.*, 2016 U.S. Dist. LEXIS 170519, *19 (N.D. Ind. Dec. 9, 2016) (it is "not uncommon, though, for TCPA cases to be certified as class actions, even when issues of consent and revocation are present."). The main case Defendants cite did not decide a class certification motion plus, unlike here, there were no defined criteria offered to determine who revoked consent. *See Wolfkiel v. Intersections Ins. Servs.*, 303 F.R.D. 287, 292 (N.D. Ill. 2014). The other cases Defendants cite presented individual issues about whether consent was given in the first place, not the narrow, unitary question presented here of whether a return text containing the single-word "stop" reasonably revokes consent. Indeed, one of Defendant's cases, *Jamison v. First Credit Servs., Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013), recognizes that generalizations about "consent" issues raised in other TCPA cases, like Defendants' arguments, cannot defeat certification. *See Id.* at 107 ("if the defendants fail to set forth this specific evidence and instead only make vague assertions about consent, then individualized issues regarding consent will not predominate over common questions of law or fact so as to prevent class certification."); and

*Wilkes*, 2016 U.S. Dist. LEXIS 170519, *20 (same).[6]

Finally, Defendants quote a litany of text messages from Mr. Biggerstaff's *prior* reports that say more than the word "stop," and claim they show some stop texts merit individual consideration. This argument fails because again, they are beyond the class definition, and accordingly they are not in Mr. Biggerstaff's current report. Thus no individual interpretation is possible, let alone needed. Defendants fail to identify any genuine individual issue, let alone one that could predominate over the stop class's two common liability contentions.[7]

### E.   Plaintiff Is Typical of the Stop Classes – Rule 23(a)(3)

"Typicality" simply asks if Plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Stanley v. Nat'l Recovery Agency*, 2016 U.S. Dist. LEXIS 99216, *6 (S.D. Ind. July 29, 2016) (Lawrence, J.), quoting *De La Fuente v. Stokely-Van-Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The test is met because Defendants' vendor texted Plaintiff and each class member using an ATDS after previously receiving a return text containing the single word "stop." (Dkt. 170 at 14). It is undisputed that Plaintiff's and all stop class's claims are based on the same theory, *i.e.*, the TCPA's prohibition against using an ATDS to call without consent. (*Id.* at

---

[6] The other cases Defendants cite dealt with whether consent was given in the first place, which is not at issue here. *See Ung v. Univ. Acceptance Corp.*, 319 F.R.D. 537, 541 (D. Minn. 2017) (liability will "hinge" on whether consent given); *Conrad v. Gen. Motors Acceptance Corp.*, 283 F.R.D. 326, 329 (N.D. Tex. 2012); *Shamblin v. Obama*, 2015 U.S. Dist. LEXIS 54849, *29 (M.D. Fla. 2015); *G.M. Sign, Inc. v. Brink's MFG. Co.*, 2011 U.S. Dist. LEXIS 7084, *21 (N.D. Ill. 2011); *Chapman v. First Index, Inc.*, 2014 U.S. Dist. LEXIS 27556, *12 (N.D. Ill. 2014).

[7] Defendants also attack Mr. Biggerstaff for not "speaking to" RingClear about the "meaning" of the call reports it produced to Defendants, but Defendants fail to explain how that demonstrates any individual issue. The short answer is none. Also, there is no reason to talk to RingClear because the data itself identifies which texts say "stop" and which numbers RingClear texted after receiving a single-word "stop" text. Mr. Biggerstaff simply compiled the data.

14-15). Accordingly, the typicality requirement is met.

Defendants claim Plaintiff may not be typical of some class members because allegedly some "appear to" have not been the intended recipients of Defendants' texts, making them "wrong parties" who never gave consent in the first place. This argument fails for three reasons.

First, the possibility that some members were texted at a wrong number does not change the fact that their claims present the same material facts and legal theory as Plaintiff, *i.e.*, Defendants continued to text them after they return-texted the single word "stop." At best, a class member who is also a "wrong party" has an *additional* (not different) basis to claim consent was lacking, but they and Plaintiff would still share the fact that they were texted after telling Defendants to "stop," and still share the same theory that they were texted using an ATDS without consent in violation of the TCPA.[8] Accordingly, as to any such person, Plaintiff remains typical. *See De La Fuente*, 713 F.2d at 232 ("The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact."); *see also*, *e.g.*, *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998) (plaintiff typical of those who paid collection fee, even if plaintiff did not, because they received same illegal communication).[9]

---

[8] This is not a "wrong party" case. In a wrong party case, the class consists of persons called at a wrong number. Here, wrong party status is neither required for class membership nor to prove any claim. Simply put, wrong party cases Defendants cite are irrelevant. *See*, *e.g.*, *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292 (N.D. Ill. 2014).

[9] Defendants claim courts routinely deny certification in "wrong party" cases but, as Defendants concede, this is *not* such a case. In addition, courts have certified wrong party cases including in this district. *See*, *e.g.*, *Johnson v. Navient Sols., Inc.,* 315 F.R.D. 501, 502-3 (S.D. Ind. 2016) ("Plaintiff's proposed method of identifying potential class members [those files marked wrong number] is adequate for class certification. There will undoubtedly be differences in the amount of damages claimed by class members, differences on users and habits of users, yet these matters can be efficiently addressed" and finding "once the user of that phone notifies the originating entity that there is a wrong number, those calls must stop[.]").

Second, Defendants' argument is based on speculation, not fact. Although Defendants have call records for each call at issue, and received twice-daily call reports from their vendor RingClear, Defendants do not identify a single stop class member texted at a wrong number or who is otherwise a "wrong party." Instead, Defendants point to texts from non-class members containing language allegedly suggesting the recipient may be a wrong party. Again, the stop class only includes texts that say "stop." (Dkt. 170 at 4). Thus, even if "wrong party" status could affect typicality, Defendants do not show it applies to any stop class member. Plaintiff is not obligated to rebut speculation. *See Brieger*, 245 F.R.D. at 355, citing *Rosario*, 963 F.2d at 1018-19; *see also Johnson v. Yahoo!, Inc.*, 2016 U.S. Dist. LEXIS 256, *21 (N.D. Ill. Jan. 4, 2016) (common issues predominate in TCPA case because there was no "specific evidence showing that a significant percentage of the putative class" was subject to an asserted issue).

Third, even if Defendants could substantiate their speculation that some class members are "wrong parties," the presence of those facts as to such class members would not affect *Plaintiff's* typicality. *See Kleen Prods., LLC v. Int'l Paper Co.*, 831 F.3d 919, 930 (7th Cir. 2016) ("this smattering of individual contract defenses does not undermine the superiority of the (b)(3) class action."); *Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 494 (N.D. Cal. 2010) ("defenses that may bar recovery for some members of the putative class, but that are not applicable to the class representative, do not render a class representative atypical under Rule 23.") (collecting cases); *see also Krakauer v. Dish Network, LLC*, 311 F.R.D. 384, 399 (M.D.N.C. 2015) ("While there are potentially a number of individual issues, these issues appear to apply to only a small number of class members and are straightforward."). Regardless, once again, Defendants have not identified any such class member.

Defendants cite *Cholly v. Uptain Group, Inc.*, but that case is inapposite for several reasons.

10

As Defendants admit, it involved a pre-discovery motion to strike, not a class certification motion. *See Cholly*, 2017 U.S. Dist. LEXIS 14449, *8 (N.D. Ill. Feb. 1, 2017). Also, it cites no reasoning or authority for its typicality decision (except a bare cite to Rule 23). *See id.* at *9.

Finally, *Cholly* is plainly distinguishable.[10] The plaintiff's claim was based on a revocation of consent, but the class claims were based on a failure to ever give consent. *See id.*; *see also Sullivan v. All Web Leads, Inc.*, 2017 U.S. Dist. LEXIS 84232, *24 (N.D. Ill. June 1, 2017) (noting the *Cholly* plaintiff and class claims were distinct because the plaintiff revoked consent, whereas the class never gave consent). By contrast, here Plaintiff's and the stop class members' claims stem from identical facts – Defendants texted each person after they return texted the word "stop." *See*, *e.g.*, *id.* (distinguishing *Cholly* because "Sullivan seeks to represent a class of individuals each of whom engaged in the same consent procedure that he did — filling out the quote form, clicking 'Submit,' and then receiving an autodialed cell phone call."). To be sure, *Cholly* does not say or show that Plaintiff is rendered atypical by the speculative possibility that some class members could have an additional means to argue consent is lacking. Rule 23(a)(3) is met.

The stop classes meet the numerosity, commonality, typicality and predominance. Plaintiff addresses adequacy and superiority below, as Defendants' response is identical for all classes.

## IV.   The Bankruptcy Class Meets Rule 23(a)(1)-(3) and the Predominance Requirement

### A.   The Bankruptcy Class Is Ascertainable

Defendants do not dispute Plaintiff's showing that the bankruptcy class is ascertainable.

### B.   Defendants Do Not Present a Basis to Dispute Numerosity – Rule 23(a)(1)

Defendants admit they do not "separately" dispute numerosity or that joinder is

---

[10] Defendants also cite the order declining a Rule 23(f) appeal in *Cholly*, but the order is not a ruling and does not purport to express an opinion. Declining a Rule 23(f) petition is normal. The Seventh Circuit has reversed numerous opinions where it initially declined a Rule 23(f) petition.

impracticable, as required by Federal Rule 23(a)(1). (*See* Dkt. 177 at 23). As such, numerosity is met as the bankruptcy class contains more than a thousand members. (Dkt. 170 at 9-10); *and see Smith*, 244 F.R.D. at 517 (40 members is sufficient).

### C.      The Bankruptcy Class Presents Common Contentions – Rule 23(a)(2)

As noted above, the Court already found this requirement met because this class presents the common contention that "an automated telephone dialing system was used to send the text messages" or make the calls at issue. (Dkt. 164 at 6, and 10-11). Defendants do not dispute this.

The bankruptcy class presents the additional common contention that filing bankruptcy revokes consent. (Dkt. 170 at 13, citing, *e.g.*, *Wilkes*, 2016 U.S. Dist. LEXIS 170519, *21 ("the common question is whether terminating coverage from a provider operates to revoke consent to be called by that provider…"). Defendants do not dispute this either. Instead, they claim there are "differences" as to how they notated or coded their records to indicate when a debtor went bankrupt, but the Court already rejected this argument. (Dkt. 101 (6/24/15 Order), p.3) ("the class includes all account holders who were called 'during the period of an automatic stay from a bankruptcy court' [and] [t]here does not seem to be a dispute that the Plaintiff falls squarely into that class…"). When and how Defendants notated or coded a person's bankruptcy is not part of the class definition or an element of the claim. (Dkt. 170 at 4). Again, the TCPA is a strict liability statute. *See Dish Network*, 256 F.Supp.3d 810, 2017 U.S. Dist. LEXIS 85543, *352. Accordingly, Defendants "coding" argument does not rebut Plaintiff's showing that the bankruptcy class claims present one or more common contentions, thus satisfying Rule 23(a)(2).

### D.      Common Issues Predominate for the Bankruptcy Class – Rule 23(b)(3)

Predominance only requires that the "common questions represent a significant aspect of a case and ... can be resolved for all members of a class in a single adjudication." *Messner*, 669

F.3d at 815 (brackets omitted). The test is met because again, the Court already ruled that "whether an automated telephone dialing system was used to send the text messages … is **central** to the validity of each one of the claims …" (Dkt. 164 at 6) (emphasis added). Likewise, the class contention that filing bankruptcy is a reasonable way to revoke consent is critical because a "yes" confirms that all calls during the resulting bankruptcy stay violated the TCPA.

Defendants do not dispute that these questions predominate. They just dispute the ***merits*** of Plaintiff's claim that filing bankruptcy revokes consent, citing a single, non-binding bankruptcy decision. However, Defendants' belief that the class will lose this issue just shows it is common because Defendants' argument, *i.e.*, that filing bankruptcy is not a sufficiently "clear" means of revocation, applies to all class members. Regardless, the merits are not at issue here, and thus no basis to oppose class certification. *See Messner*, 669 F.3d at 811 ("the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits.").

Defendants also argue that individual inquiry is needed to identify which persons actually filed bankruptcy. However, that is irrelevant to the predominance inquiry. *See Mullins*, 795 F.3d at 663 (alleged difficulty identifying class "better addressed by the explicit requirements of Rule 23(b)(3), which requires that the class device be 'superior'…"). The predominance inquiry only asks if the common issues predominate over any individual issues, and filing bankruptcy is a condition of class membership (Dkt. 170 at 4), not an "issue" to be adjudicated for its members.

In any event, determining which of the 4,340 persons identified by Defendants actually filed for bankruptcy is a ministerial activity. Defendants do not dispute Plaintiff's showing that it is a standard business practice to run a bankruptcy scrub program against public bankruptcy records to identify bankruptcies. (Dkt. 170 at 11, fn.5, citing, *e.g.*, *Novak v. Monarch Recovery Mgmt.*, 235 F.Supp.3d 1039, 1042 (N.D. Ill. 2016)). Also, Defendants concede "[t]his court may

take judicial notice of the contents of those court records…" (Dkt. 177 at 31). At that point, Mr. Biggerstaff need only electronically compare bankruptcy filing dates to call dates, just as he electronically compared class member "stop" text dates to RingClear's text dates. (*See* Dkt. 170-2 (Biggerstaff Rep.) at ¶1). Defendants nakedly dispute this, but raw denial is no substitute for evidence, and Mr. Biggerstaff's capabilities are unrebutted. In any event, even a manual review of the 4,300 bankruptcy files on PACER would confirm which class members went bankrupt.

Finally, Defendants claim individual inquiry is needed to determine if any class member's claim is barred by judicial estoppel. But Defendants cite no evidence that *any* member is subject to that defense. Again, Rule 23(b)(3) is only concerned with real issues, not speculative "potential" ones. *See Brieger*, 245 F.R.D. at 355 ("Courts do not deny class certification on speculative or hypothetical conflicts."); *see also Nelson v. IPALCO Enters.*, 2003 U.S. Dist. LEXIS 26392, *25 (S.D. Ind. Sept. 30, 2003) ("defendants' argument against certification is built upon the weak foundation of its release defense, and it is far too speculative to defeat class certification."). As shown, the bankruptcy class's real issues are common and predominate.

### E.    Plaintiff Is Typical of the Bankruptcy Class – Rule 23(a)(3)

Defendants claim Plaintiff is not typical of "some" bankruptcy class members because some bankruptcy class members allegedly never went bankrupt. This argument is frivolous because a person who never filed bankruptcy is not a member of the bankruptcy class. By definition, the class only includes persons whose cell phones Defendants called "during a period of an automatic stay as ordered from a Bankruptcy Court." (Dkt. 170 at 4). Obviously, a person who never filed bankruptcy cannot meet this element of the definition.

Defendants cite the fact that their own review of only 100 of the more than 4,300 persons Defendants called after noting in their records that the person had gone bankrupt showed that *some*

debtors never actually filed bankruptcy. This just shows it is an administrative process to identify who filed bankruptcy, which Plaintiff has been precluded from doing because the Magistrate granted Defendants' request to withhold the putative class members' identities. Regardless, whether Defendants incorrectly notated a persons as filing bankruptcy does not affect Plaintiff's typicality as to persons who did and were called during the stay (like Plaintiff).

The bankruptcy class meets the numerosity, commonality, typicality and predominance requirements. The adequacy and superiority requirements are also met, as shown below.

## V.   Plaintiff and Her Counsel Are Adequate Representatives – Rule 23(a)(4)

Plaintiff and her counsel meet Rule 23's adequacy requirement because she "(1) has retained competent counsel, (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy, and (3) does not have interests antagonistic to those of the class." *Fournigault v. Independence One Mortgage Corp.*, 234 F.R.D. 641, 646 (N.D. Ill. 2006). Plaintiff's counsel have decades of class action experience and committed extensive resources to prosecuting the class claims, Plaintiff's ability to recover statutory damages gives her a sufficient interest in the outcome, and she has no interests contrary to the class members. (Dkt. 170 at 16-17). Nevertheless, like a "pious" fox guarding the hen house,[11] Defendants challenge Plaintiff's adequacy by baselessly claiming her attorney-representation agreement violates the ethics rules, and that Plaintiff effectively "abandoned" the case to her counsel. Both arguments are wrong.

### A.   The Representation Agreement Does Not Affect Adequacy.

Defendants "ethics" argument violates the Court's prior order stating that "[t]he Court will

---

[11] *See Eggleston v Chicago Journeymen Plumbers' Local Union No. 130*, 657 F.2d 890, 895 (7th Cir. 1981) ("[I]t is often the defendant, preferring not to be successfully sued by anyone, who supposedly undertakes to assist the court in determining whether…'the representative parties will fairly and adequately protect the interests of the class.' …[I]t is a bit like permitting a fox, although with a pious countenance, to take charge of the chicken house.").

15

not consider expert opinions" on the adequacy issue. (Dkt. 137, p.4). Defendants acknowledge the order (Dkt. 177 at 10, fn.6), but then disregard it, presenting Mr. Lundberg's legal opinions over several pages. (*Id.* at 10-12). Defendants claim they are just preserving the opinions, but Mr. Lundberg's opinions are already "preserved" in prior briefs. Per this Court's order, all of Mr. Lundberg's opinions and the arguments based on them should be disregarded.[12]

In any event, Defendants do not point to anything in Plaintiff's representation agreement that violates the IRPC. There is no violation of IRPC 1.2(a), which requires a lawyer to abide by a client's decision to settle, because the agreement does not provide otherwise. IRPC 1.2(a) also does not distinguish between contingent and hourly cases as Defendants' arguments suggest.

Likewise, the possibility the fee might exceed Plaintiff's recovery does not violate IRPC 1.5(a). The rule does not say otherwise. If it did, it would be contrary to federal law because fee awards commonly exceed recoveries in civil rights and consumer rights cases with a fee-shifting statute (like the FDCPA), which is necessary to incentivize lawyers to take the cases (as Congress intended). *See Tuf Racing Prods., Inc. v. American Suzuki Motor Corp.*, 223 F. 3d 585, 592 (7th Cir. 2000) ("one purpose of fee shifting is to enable such claims to be litigated, and the purpose would be thwarted by capping the attorneys' fees award at the level of the damages award."); *see also United States Football League v. Nat'l Football League*, 887 F.2d 408, 409 (2d Cir. 1989) ($5.5 million fee award on $3.00 recovery). Regardless, even without a fee-shifting statute, there is no requirement that Plaintiff's counsel work for free, or that Plaintiff not be responsible for fees if she abandons the case when the decision is always hers to make. There is no ethics violation.

---

[12] Also, Mr. Lundberg's opinions fail Fed. R. Evid. 702. They will not help the fact finder because the jury does not decide class certification, and they are not proper expert opinion because they consist of legal argument. *See United States v. Knoll*, 785 F.3d 1151, 1156 (7th Cir. 2015). But if the Court considers his opinions or arguments based on them, Plaintiff would incorporate the rebuttal opinions of Kevin McGoff and argument from her past reply. (Dkt. 119, p.14-20).

Even if Defendants had identified a genuine ethics issue, however, it cannot render counsel inadequate unless it seriously undermines their ability to work for the class. *See Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 (7th Cir. 2013) ("Not any ethical breach justifies the grave option of denying class certification."). Defendants acknowledged this. (Dkt. 153 at 15 ("Admittedly, the existence of an ethical violation is not *per se* disqualifying.")). And they show no violation. They just baselessly claim the alleged issues they raise makes Ms. Lanteri a "servant" of her counsel, but do not and cannot show that the representation agreement actually affects her ability to make decisions for the class's benefit. Again, the term Defendants are complaining about *only* comes into play if Ms. Lanteri decides to *abandon* the class. In fact, Ms. Lanteri's deposition demonstrated she has a firm understanding of the issues and confirmed her willingness to represent the class as set out below. (Dkt. 170 at 17 and Ex. G).

Defendants also claim the agreement could cause Plaintiff to forgo an individual settlement offer, but cite no case holding adequacy turns on being free to abandon a class and settle individually without paying one's lawyers. In any event, Defendant made no such offer, and thus once again they are improperly speculating. *See Brieger*, 245 F.R.D. at 355 ("Courts do not deny class certification on speculative or hypothetical conflicts."), citing *Rosario*, 963 F.2d at 1018-19; *Nelson*, 2003 U.S. Dist. LEXIS 26392, *25 (rejecting "speculative" arguments).

If anything, Ms. Lanteri's agreement to pay her counsel's fees if she abandons the class *supports* her adequacy because it helps ensure she will zealously prosecute the case for the class, as she has done. For this reason, some courts have held class certification may be denied if the plaintiff does not assume responsibility for costs (although the Seventh Circuit does not require this). *See e.g., Stinson v. City of New York*, 282 F.R.D. 360, 372 (S.D.N.Y. 2012); *compare Blair v. Equifax Check Services*, 1999 U.S. Dist. LEXIS 2536, *9-*10 (N.D. Ill. 1999).

17

Finally, even if Defendants could point to a genuine problem with the agreement, the solution would not be to deny class certification, but instead "a simple amendment of the retainer agreement." *In re Ocean Bank*, 2007 U.S. Dist. LEXIS 29443, *20 (N.D. Ill. 2007). Thus, Plaintiff's representation agreement does not even implicate her adequacy, let alone destroy it.

### B.    Ms. Lanteri Did Not "Abandon" the Case to Her Counsel.

Defendants claim Ms. Lanteri "placed complete control of this case to class counsel, without any limitation, under and all circumstances [sic], anticipated or unanticipated." (Dkt. 177 at 14). This baseless hyperbole is contrary to the Seventh Circuit's admonition that:

> We don't want to be misunderstood, however, as extending an invitation to defendants to try to derail legitimate class actions by conjuring up trivial credibility problems or insubstantial defenses unique to the class representative. Serious challenges to typicality and adequacy must be distinguished from petty issues manufactured by defendants to distract the judge from his or her proper focus under Rule 23(a)(3) and (4) on the interests of the class…

*C.E. Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 728 (7th Cir. 2011).

Far from abandoning the case to her lawyers, Ms. Lanteri's uncontradicted testimony shows she is an active participant. She: (1) spoke to her lawyers about the case more than twenty times; (2) knows she's the proposed class representative in the case involving the TCPA; (3) knows the class includes persons Defendants called on their cell phones after being told not to; (4) contributed to drafting the complaint, gave discovery responses, will attend any trial, and will accept the result the Court awards. (Dkt. 170 at 17; Dkt 170-8 (Lanteri Dep.) at pp.27:11-28:14, 52:3-53:11, 54:14-20, 55:9-16, 56:7-57:13, 67:3-8, 68:1-8).

By contrast, Defendants only cite initial difficulties recalling details of the representation agreement signed years earlier, which is not relevant her claim, plus Ms. Lanteri was able to testify about the document when shown it. This is not sufficient to question adequacy because it does not "so severely undermin[e] plaintiff's credibility that a fact finder might reasonably focus on

18

plaintiff's credibility, to the detriment of the absent class members' claims." *C.E. Design Ltd.*, 637 F.3d at 728; *see also Eggleston*, 657 F.2d at 896 (plaintiff adequate in *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 366 (1966), even though she "did not understand her complaint at all, could not explain the statements in it, had little knowledge of what the lawsuit was about, did not know the defendants by name, nor even the nature of the misconduct of the defendants.").

The cases Defendants cite to question Ms. Lanteri's relationship with counsel are inapposite. None bear any resemblance to this case. In one, the plaintiff was class counsel's former law firm co-worker, in another the plaintiff was counsel's father-in-law, and in a third the plaintiff was class counsel's brother. *Redman v. Radioshack Corp.,* 768 F.3d 622, 638 (7th Cir. 2014); *Eubank v. Pella Corp.,* 753 F.3d 718, 723 (7th Cir. 2014); *Susman v. Lincoln Am. Corp.*, 561 F.2d 86, 89 (7th Cir. 1977).[13] By contrast, Ms. Lanteri and her counsel only have an attorney-client relationship. Indeed, two of her lawyers represented her in the past, further supporting her adequacy. *See Murray v. GMAC Mort. Corp.*, 434 F.3d 948, 954 (7th Cir. 2006) ("Repeat litigants may be better able to monitor the conduct of counsel, who as a practical matter are the class's real champions."). Rule 23(a)(4) is met.

## VI.    Defendants Do Not Materially Dispute Class Superiority – Rule 23(b)(3).

"Rule 23(b) was designed for situations … in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate." *Murray*, 434 F.3d at 953; *see also Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights."). That is the case

---

[13] Defendants admit the other cases they cite involved "family relationships" between the proposed representative and class counsel, in addition to facts suggesting the plaintiff had "no interest" in the case. (Dkt. 177 at 13). Again, there are no such facts here.

19

here. It is undisputed most class members cannot feasibly litigate their claims individually because each claim is likely worth no more than $500, and the TCPA does not provide for fee-shifting. *See Agne v. Papa John's Int'l*, 286 F.R.D. 559, 571 (W.D. Wash. 2012) ("Five hundred dollars is not sufficient to compensate the average consumer for the time and effort that would be involved…"). Thus, a class action is not just a superior method – for most class members it is the only method.

It is also undisputed that requiring individual suits would be contrary to judicial economy. It would needlessly force multiple courts to hear the same evidence and decide the same issues. *See Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) (individual actions "would be repetitive, wasteful, and an extraordinary burden on the courts."); *Birchmeier v. Caribbean Cruise Lines*, 302 F.R.D. 240, 255 (N.D. Ill. 2014) (in a TCPA case, "[i]ndividual litigation … would not be a superior or efficient way to resolve the claims.").

The only distinct "superiority" argument Defendants appear to make is to claim identifying bankruptcy class members (but not stop class members) may involve individual inquires. As shown that is a ministerial function at best.[14] It does not demonstrate a class action is inferior for the bankruptcy class because again, alleged "difficulties" identifying class members is almost never sufficient to deny class certification. *See Mullins*, 795 F.3d at 665 ("courts should not refuse to certify a class merely on the basis of manageability concerns."); *Johnson*, 315 F.R.D. at 503 (class identification "is not required prior to certification…"). In short, there are no insurmountable management issues. A class action remains superior.

For the foregoing reasons, Plaintiff respectfully moves this Court to certify the classes.

---

[14] Defendants vaguely claim the review was "painstaking," but simultaneously admit it can be done by computer, *i.e.*, on Pacer. Defendants' "painstaking" claim is suspect as Plaintiff was not permitted to perform her own review because Defendants refused to produce class member identities, and the Magistrate Judge declined to compel that information. (*See* Dkt. 170 at 10).

Respectfully submitted,
s/*Keith J. Keogh*
One of Plaintiff's Attorneys

November 22, 2017

David J. Philipps (Ill. Bar No. 06196285)
Philipps & Philipps, Ltd.
9760 South Roberts Road
Suite One
Palos Hills, Illinois 60465
(708) 974-2900/(708) 974-2907 (FAX)
davephilipps@aol.com

Keith J. Keogh (Ill. Bar No. 6257811)
Michael S. Hilicki (Ill. Bar. No. 6225170)
Keogh Law, Ltd.
55 W. Monroe St., Ste. 3390
Chicago, Illinois 60603
(312) 726-1092/(312) 726-1093 (fax)
Keith@KeoghLaw.com
MHilicki@KeoghLaw.com

Steven J. Halbert
11805 N. Pennsylvania Street
AmeriCenters Building
Carmel, Indiana 46032
(317) 706-6762/(317) 706-6763 (FAX)
shalbertlaw@aol.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 22, 2017, I electronically filed the foregoing document with the Clerk of the Court using CM/DKT., which automatically provided a copy of the same to all subscribers thereto.


s/*Keith J. Keogh*
One of Plaintiff's Attorneys

22