UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| KATHERINE LANTERI, individually, and on behalf of all others similarly situated, | ) ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) Cause No. 1:13-cv-1501-WTL-MJD ) |
| CREDIT PROTECTION ASSOCIATION L.P., et al., | ) ) ) |
| Defendants. | ) |

### ENTRY ON PLAINTIFF'S THIRD AMENDED MOTION TO CERTIFY CLASS

This cause is before the Court on the Plaintiff's Third Amended Motion for Class Certification (Dkt. No. 169). The motion is fully briefed, and the Court, being duly advised, **DENIES IN PART** and **PROVISIONALLY GRANTS IN PART** the motion to the extent and for the reasons set forth below.

### I. BACKGROUND

The Plaintiff seeks class certification with respect to her claims under the Telephone Consumer Protection Act ("TCPA"). The Plaintiff alleges that the Defendants[1] violated the TCPA by continuing to send text messages to her cellular telephone number after she replied "stop" when instructed to reply "STOP" to opt out from receiving further text messages, and by contacting her regarding a debt while the debt was subject to an automatic stay order of a bankruptcy court. She now moves the Court to certify two TCPA classes: a Stop Class[2] and a

---

[1]For purposes of this Entry, the Court need not distinguish between the two Defendants.
[2]The Plaintiff has proposed two alternative "Stop" classes. The difference between them is that one refers to the attempt to collect a debt and the other does not. The Court agrees with the Plaintiff that "the debt-collection language [in the Stop Class definition] is unnecessary

Bankruptcy Class. The Plaintiff further moves the Court to appoint the Plaintiff as class representative and to appoint Steven Halbert, Keith Keogh, and David Philipps as counsel for the classes.

## II. **DISCUSSION**

The party proposing class certification bears the burden of "'affirmatively demonstrating [her] compliance'" with the requirements of Federal Rule of Civil Procedure 23. *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551-52 (2011)). The Court has broad discretion in determining whether certification is appropriate, *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008) (citation omitted), and may "probe behind the pleadings before coming to rest on the certification question," *General Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 160 (1982).

Rule 23(a) describes the prerequisites for a class action, requiring the following conditions for certification:

1. the class is so numerous that joinder of all members is impracticable (numerosity);

2. there are questions of law or fact common to the class (commonality);

3. the claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality); and

4. the representative parties will fairly and adequately protect the interests of the class (adequacy of representation).

*Blow v. Bijora, Inc.*, 855 F.3d 793, 806 (7th Cir. 2017) (citing Fed. R. Civ. P. 23(a)). The Court is required to conduct "a rigorous analysis" to determine whether the prerequisites of Rule 23(a)

---

because the TCPA does not require a [violative] communication to be made in an attempt to collect a debt." Dkt. No. 170 at 5 (citing 47 U.S.C. § 227(b)(1)(A)). Accordingly, the Court will address the version of the Stop Class that does not contain that requirement.

have been satisfied: "[A]ctual, not presumed, conformance with Rule 23(a) remains . . . indispensable." *Falcon*, 457 U.S. at 160-61; *see also Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir. 2001) (citing *Falcon* and stating that the sentiment is "equally true of Rule 23(b)"). The Seventh Circuit also recognizes and applies to all class actions "an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). Under the so-called ascertainability requirement, class definitions fail if they are "too vague or subjective."[3] *Id.*

"When certification is sought under Rule 23(b)(3), as it is here, proponents of the class must also show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010)).

### A. Stop Class

The Plaintiff proposes the following class:

> (1) All persons within the United States (2) to whose cellular telephone number (3) Credit Protection Association, L.P. sent a text message (4) using its vendor RingClear (5) within four years of September 8, 2013, (6) where the cellular phone owner previously replied to the text message with the one-word reply "stop" in any combination of capital and lowercase letters.

The Court must determine whether the Plaintiff has satisfied each of the requirements with regard to this class.

---

[3] A class definition will also fail if it creates a fail-safe class. *Id.* The Court acknowledges that the Defendants argue that each of the Plaintiff's proposed classes create fail-safe classes, *see* Dkt. No. 153 at 7-10, but it does not find the classes to be fail safe.

*1. Typicality*

Typicality means that "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. Boeing Co.*, 633 F.3d 574, 586 (7th Cir. 2011). "[T]he requirement is meant to ensure that the named representative's claims have the same essential characteristics as the claims of the class at large." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (7th Cir. 2006) (internal quotation marks and citations omitted). "A class is disserved if its representative's claim is not typical of the claims of the class members." *CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011). Where the Plaintiff's claim "involves facts that distinguish her claim from the claims of her fellow class members," typicality is lacking. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009).

The Plaintiff argues that typicality is met because the Defendants' agent, RingClear, sent the Plaintiff and unnamed class members text messages after they had sent texts with "a 'stop' request." Dkt. No. 170 at 14. She further argues that all claims are based on the same legal theory, "the TCPA's prohibition against using an ATDS to call without the called party's consent." *Id.*

The Defendants argue that in addition to individuals like the Plaintiff, who potentially revoked consent, the Stop Class also contains individuals who never consented to receive communications (hereinafter referred to as "wrong parties"). Relying on *Cholly v. Uptain Group, Inc.*, 2017 WL 449176 (N.D. Ill. Feb. 1, 2017), they contend that the claims of those who never consented are not typical of those who revoked consent. Dkt. No. 177 at 15. *Cholly*, which is, of course, not binding on this Court, is in any event readily distinguishable from this

case,[4] and the Defendants articulate no argument beyond their recitation of the facts and holding in that case.

Here, both the Plaintiff and any wrong parties who sent a "stop" message were in the same position as of the time that they sent a "stop" message, because the allegation is that the Defendants violated the TCPA by continuing to text after receiving a "stop" message. In that respect, the Plaintiff's claim has the same essential characteristics as the claims of all of those who sent a "stop" message, regardless of whether they had previously consented to receive messages.

However, the Plaintiff's proposed Stop Class is overbroad in another sense. The proposed class included both individuals who strictly complied with the opt-out instructions, sending a text reading "STOP," and those, like the Plaintiff, who sent some variation of the word "stop" (e.g., Stop or stop). While there appears to be no question that the former group revoked consent, for the latter group, a determination will have to be made whether the failure to use all uppercase letters renders the attempt to revoke consent invalid.

The Seventh Circuit has instructed district courts to consider crafting classes for plaintiffs where the class definition presented is either overbroad or creates a fail-safe class. *See Messner*, 669 F.3d at 825 ("Either problem can and often should be solved by refining the class definition

---

[4]Unlike the Plaintiff in this case, the named plaintiff in *Cholly* sought to represent a class of individuals whose claim under the TCPA was based on the fact that they had never given consent to be called by the Defendant, while her claim was that the Defendant had violated the TCPA by calling her after she had expressly revoked her consent. Thus, the named plaintiff sought to represent a class of people whose claims were not based on the same legal theory as her own. That is not the case here, as the named Plaintiff here seeks to assert a claim that the TCPA was violated as to all of the members of the stop class because the Defendants texted them after receiving a "stop" text from them. The fact that some of the class members could potentially also assert a claim based solely on the fact that they were texted (or called) by the Defendants without ever having given consent does not alter the fact that the named Plaintiff's claim is typical of the claim being asserted by the stop class in this case.

rather than by flatly denying class certification on that basis."). The Court therefore defines the class as follows:

> (1) All persons within the United States (2) to whose cellular telephone number (3) Credit Protection Association, L.P. sent a text message (4) using its vendor RingClear (5) within four years of September 8, 2013, (6) after the cellular phone owner replied with the one-word reply "stop" in any combination of uppercase and lowercase letters other than "STOP" in all uppercase letters.

The term "Stop Class" as used in the remainder of this Entry refers to this class.

### 2. *Commonality*

The Defendants argue that the Plaintiff has failed to show that she satisfies the commonality requirement because she does not provide evidence of common answers to the issues presented. Dkt. No. 153 at 19. Commonality requires a "common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). To satisfy commonality, the Plaintiff must show that the Plaintiff and class members "share some question of law or fact that can be answered *all at once* and that the *single answer* to that question will resolve a central issue in all class members' claims." *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 497 (7th Cir. 2012). "[S]uperficial common questions—like whether each class member . . . 'suffered a violation of the same provision of law'—are not enough." *Id.* (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 350). "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014) (citations omitted). "'Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury' at the hands of the same

defendant." *McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 800 (7th Cir. 2017) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 349-50).

The Plaintiff argues that there are two common contentions with respect to the Stop Class: whether "an ATDS was used to send the texts at issue" and whether "sending a reply text containing only the word 'stop' is a 'reasonable method' for revoking consent." Dkt. No. 170 at 12. These questions are common to all individuals in the proposed class, and the "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. "[F]or purposes of Rule 23(a)(2) even a single common question will do." *Id.* at 359 (internal quotations omitted). Furthermore, the alleged injury that the proposed class members suffered is the same: all received at least one text message after sending a "stop" message. Therefore, the same conduct by the Defendants gives rise to the same kinds of injury and claims for all potential class members, and, the Plaintiff has satisfied the commonality requirement with respect to this class.

### 3. Numerosity

A class is appropriate if it "is so numerous that joinder of all members is impracticable."[5] Fed. R. Civ. P. 23(a); *see also Chapman v. Wagener Equities Inc.*, 747 F.3d 489, 492 (7th Cir. 2014) ("[A] class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit.") (citation omitted). Although the Plaintiff has not addressed the numerosity requirement specifically with respect to the Stop Class fashioned by the Court, the data she presents shows

---

[5]The Defendants "challenge numerosity to the extent it cannot be met if the class cannot be ascertained[] or requires an individualized inquiry." Dkt. No. 177 at 23. The Defendants' arguments regarding ascertainability and predominance, which relate to the need for individualized inquiry, are addressed later in this Entry.

7

that, after removing those who strictly complied with the opt-out instruction by texting "STOP," several thousand individuals received text messages after sending a "stop" message. *See* Dkt. No. 170 at 5. Accordingly, the numerosity requirement is met.

### 4. Ascertainability

The Seventh Circuit has "long recognized an implicit requirement under Rule 23 that a class must be defined clearly and that membership be defined by objective criteria rather than by, for example, a class member's state of mind." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015) (describing "ascertainability"). The Defendants assert that the Stop Class is not ascertainable, arguing that the Plaintiff has not addressed how to identify wrong parties. To support their position, the Defendants cite *Jamison v. First Credit Services, Inc.*, 290 F.R.D. 92 (N.D. Ill. 2013). In that case, the court determined that the plaintiff failed to establish that the class was ascertainable because he did not propose any method "to identify the regular user of a particular wireless number at the specific point in time [the Defendants] placed calls that were violative of the TCPA." *Id.* at 109. Likewise here, the Plaintiff has not proposed a means of identifying wrong parties. A search of the Defendants' records identifies the intended recipients of the messages, not actual recipients or individuals who responded with a "stop" message. *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012) (under TCPA, "called party" is "the person subscribing to the called number at the time the call is made"). However, the Plaintiff, relying on *Mullins*, maintains that "difficulty identifying class members is ***not*** an ascertainability issue" and is better addressed in analyzing Rule 23(b)(3) requirements. Dkt. No. 183 at 2-3 (emphasis in original). The Court agrees. As explained in *Mullins*, the Seventh Circuit's ascertainability analysis does not require plaintiffs to "prove at the certification stage that there is a 'reliable and administratively feasible' way to identify all who fall within the class

8

definition." 795 F.3d at 657. Rather, the requirement simply seeks to ensure that a class definition is clear and objective and not "too vague or subjective" or fail-safe. *Id.*

The Stop Class definition is not vague or subjective and does not create a fail-safe class. Instead, it clearly identifies a group of individuals: those who received a text message from the Defendants after sending a "stop" message to the Defendants. Thus, the ascertainability requirement is met.

### 5. *Adequacy of Representation*

Rule 23(a)'s adequacy of representation requirement focuses on the quality of the Plaintiff to serve as the named representative. It requires "the representative parties [to] fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). This requirement "is composed of two parts: 'the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest' of the class members." *Retired Chicago Police Assn. v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993) (quoting *Sec'y of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986)). With regard to the Plaintiff's counsel's representation of the class, "[a]nything 'pertinent to counsel's ability to fairly and adequately represent the interests of the class' bears on the class certification decision." *Reliable Money Order, Inc. v. McKnight Sales Co.*, 704 F.3d 489, 498 (7th Cir. 2013) (quoting Fed. R. Civ. P. 23(g)(1)(B)).

The Defendants contend that the Plaintiff's counsel cannot adequately represent the class because counsel entered into an arrangement with the Plaintiff "that is impermissible and renders them both inadequate." Dkt. No. 177 at 9. They point to a provision of the Plaintiff's representation agreement with her counsel that states as follows:

> If Client abandons the class and settles on an individual basis against the advice of Attorneys, Client shall be obligated to pay Attorneys their normal hourly rates for

9

        the time they expended in the case, and shall be obligated to reimburse the Attorneys for all expenses incurred.

*Id.* (quoting Dkt. No. 177-6 at 3). The Defendants argue that, because of the fee arrangement, "[the] Plaintiff has been put in a position where she cannot adequately monitor the class counsel by virtue of the fact that she cannot, if appropriate, walk away from this case on an individual basis." *Id.* at 12. They further argue that, through this arrangement, the Plaintiff's counsel has engaged in misconduct, violating the Indiana Rules of Professional Conduct. *See id.* at 10-12.

"Misconduct by class counsel that creates a serious doubt that counsel will represent the class loyally requires denial of class certification." *Creative Montessori Learning Ctrs. v. Ashford Gear*, *LLC,* 662 F.3d 913, 914 (7th Cir. 2011) (referenced in quotation below as "*Ashford Gear II*"). The Seventh Circuit provides the following explanation for why attorney misconduct matters in TCPA cases:

> [T]he potential attorneys' fees in a class action so far outweigh the potential recovery of any individual plaintiff that they present attorneys with a strong temptation "to sell out the class by agreeing with the defendant to recommend that the judge approve a settlement involving a meager recovery for the class but generous compensation for the lawyers[.]" *Ashford Gear II*, 662 F.3d at 918. Given this temptation—in tension with the fiduciary obligations of class counsel to the unnamed class members . . . when "class counsel have demonstrated a lack of integrity, a court can have no confidence that they will act as conscientious fiduciaries of the class." *Ashford Gear II*, 662 F.3d at 918 . . . [M]isconduct that prejudices the class or creates a direct conflict between counsel and the class requires such denial.

*Reliable Money Order, Inc.*, 704 F.3d at 498-99.

As the Defendants concede, the fee arrangement does not explicitly prohibit the Plaintiff from settling, and the Court notes that the arrangement does not impose any fees, costs, or expenses on the Plaintiff were she to agree to a class settlement against her attorneys' advice. Nonetheless, as the Defendants also indicate, the arrangement creates the appearance of a

possible conflict with respect to the Plaintiff's ability to freely withdraw her claim or settle her claim against her attorneys' advice.

Plaintiff's counsel responds to the Defendants' concerns by stating that "even if Defendants could point to a genuine problem with the agreement, the solution would not be to deny class certification, but instead [would be] 'a simple amendment of the retainer agreement.'" Dkt. No. 183 at 19 (quoting *In re Ocean Bank*, 2007 WL 1063042, at *6 (N.D. Ill. Apr. 9, 2007)).

The case relied upon by Plaintiff's counsel, *In re Ocean Bank*, involved a fee arrangement in a Fair Credit Reporting Act case in which the plaintiff agreed "'to follow the recommendation of [her] attorney in connection with whether this case should be settled and the terms of such settlement.'" *Id.* at *6 (quoting retainer agreement). The agreement further provided that "'no settlement will be accepted on [plaintiff's] behalf without [plaintiff's] specific authorization and agreement." *Id.* The district court determined that the latter provision meant nothing "if Plaintiff is obligated to follow her counsel's demands concerning settlement" and determined that the agreement "improperly impinges on Plaintiff['s] independence and ability to protect the interests of the class, rendering her an inadequate class representative." *Id.* On that basis, the court denied the motion for class certification, but indicated that the plaintiff could "remedy the defect in her motion through a simple amendment of the Retainer Agreement" and found that the plaintiff was otherwise able to meet her obligations as class representative. *Id.* at 6-7. The court then allowed the plaintiff to refile an amended motion for class certification to which she had to attach a signed copy of the revised retainer agreement. *Id.* at 10.

From the Plaintiff's attorneys' reference to *In re Ocean Bank*, it appears that they are willing to amend the representation agreement with the Plaintiff to remove the requirement that

she pay fees, expenses, and costs if she withdraws her claim or settles individually against her attorneys' advice. If this is so, there is no question about the adequacy of the Plaintiff to represent the class, nor is there question about the adequacy of the Plaintiff's counsel to represent the class.[6] Accordingly, once the Plaintiff's counsel revises the representation agreement to reflect the changes described above, the adequacy requirement will be satisfied.

### *6. Predominance*

Having found that all of Rule 23(a)'s requirements are met, pending revision of the representation agreement, the Court must next determine whether the requirements of Rule 23(b) are satisfied. "[T]he predominance criterion is far more demanding" than Rule 23(a)'s commonality requirement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).

The Defendants contend that individual issues predominate over common ones, arguing that "[e]ach person in the class would need to be separately examined to determine if their intention was to expressly revoke consent[] or . . . just stop the phone calls." Dkt. No. 177 at 28. They further note that some courts have found that TCPA classes based upon consent revocation fail to satisfy the predominance requirement because "the putative class members would not be able to present the same evidence for each class member to make a prima facie showing that he or she validly revoked consent." *Id.* at 25 (citing *Wolfkiel v. Intersections Ins. Servs. Inc.*, 303

---

[6]The Defendants do not otherwise argue that Plaintiff's counsel are inadequate, and the Court finds that they have the experience and resources necessary to represent the class in this case. *See* Fed. R. Civ. P. 23(g)(1).

F.R.D. 287, 294 (N.D. Ill. Mar. 5, 2014)); *see also id.* at 29 (referring generally to *Cholly*, *Ung v. Universal Acceptance Corp.*, 319 F.R.D. 537 (D. Minn. Jan. 24, 2017), *Wolfkiel*, and *Jamison*).[7]

This matter is distinguishable from those cases in which an individualized inquiry would have been required to determine whether each potential class member revoked consent. Here, all potential class members sent a "stop" message to the Defendants, whether they had previously consented to receive text messages or were wrong-party recipients of such messages, and thereafter received at least one text message. Unlike the situation in *Cholly* and *Wolfkiel*, here there is no need for individualized inquiry into whether each potential class member revoked consent. Answering the common question—Did the "stop" messages revoke consent?—determines whether consent was revoked for all potential class members. Accordingly, this question predominates over questions affecting only individual class members.

The Defendants further assert that "[a]n examination would be required to evaluate legal revocation under the TCPA as interpreted by the FCC." Dkt. No. 177 at 28. While that is true, such an examination would be common to all potential class members and would not require individual class member inquiries. At this point in the litigation, it appears that common questions of law and fact predominate over questions affecting only individual class members.

### 7. Superiority

A class action should proceed if it is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In evaluating superiority, the Court weighs the following:

---

[7]*Ung* and *Jamison* did not deal with classes of individuals who had revoked consent. Rather, in those cases, the question was whether each individual class member consented to receive calls. The courts in those cases determined that individualized issues predominated over common questions because determining consent required an inquiry unique to each individual class member. *See Ung*, 319 F.R.D. at 540 and *Jamison*, 290 F.R.D. at 107, respectively.

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). "Commonly referred to as 'manageability,' this consideration encompasses the whole range of practical problems that may render the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974). The requirement, "unlike the freestanding ascertainability requirement, is comparative: the court must assess efficiency with an eye toward 'other available methods.'" *Mullins*, 795 F.3d at 664 (quoting Fed. R. Civ. P. 23(b)(3)). "Under this comparative framework, refusing to certify on manageability grounds alone should be the last resort." *Id.*

The Plaintiff contends that a class action is the superior method of proceeding in this case because "individual actions are not feasible because attorneys' fees will greatly exceed the recovery." Dkt. No. 170 at 22. She points out that the Seventh Circuit acknowledges that "'Rule 23(b) was designed for situations . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.'" *Id.* at 21 (quoting *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006)). She further argues that each class member "has a claim likely worth no more than $500 per call," and "[f]ew consumers have the ability to feasibly [combat a vigorous defense] on an individual claim worth only a few hundred or thousand dollars, and fewer still would have the ability or wherewithal to find counsel willing to take their case and prosecute it on an individual basis." *Id.* Furthermore, the Plaintiff argues that a class action is superior because it is "the most efficient means of resolving the claims. Dkt.

14

No. 170 at 23. Here, the Plaintiff contends, having one suit address whether the "stop" messages sent constitute revocation of consent is more efficient than having multiple individual suits addressing the same question. *Id.*

While the Defendants do not directly address the superiority requirement with respect to the Stop Class in their briefing, the Defendants' argument regarding ascertainability is relevant to the question of superiority. The Defendants argue that the Plaintiff has not provided a method for identifying wrong parties, and the identity of those parties is, therefore, not ascertainable. Dkt. No. 177 at 7. As instructed by the Seventh Circuit, the district court should "consider the alternatives as Rule 23(b)(3) instructs rather than denying certification because it may be challenging to identify particular class members." *Id.* at 664. As stated in *Mullins*:

> [A] district judge has discretion to (and we think normally should) wait and see how serious the problem may turn out to be after settlement or judgment, when much more may be known about available records, response rates, and other relevant factors. And if a problem is truly insoluble, the court may decertify the class at a later stage of the litigation.

*Id.* (citing *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)). The Court does not at this time believe that any potential difficulties in identifying wrong parties are such that class certification should be denied.

### 8. Conclusion as to Stop Class

For all of the above reasons, provided that the Plaintiff and her counsel revise the representation agreement to remove the requirement that the Plaintiff pay fees, expenses, and costs if she were to withdraw her claim or settle individually against her attorneys' advice and submit an executed copy of the revised agreement to the Court, the Court will certify the following class:

1) All persons within the United States (2) to whose cellular telephone number (3) Credit Protection Association, L.P., sent a text message (4) using its vendor RingClear (5) within four years of September 8, 2013, (6) after the cellular phone owner replied with the one-word reply "stop" in any combination of uppercase and lowercase letters other than "STOP" in all uppercase letters.

### B. Bankruptcy Class

The Plaintiff also seeks to certify the following class, which the Court suggested the Plaintiff might represent (*see* Dkt. No. 164 at 12):

(1) All persons within the United States (2) whose cellular telephone number (3) Credit Protection Association, L.P. called in an attempt to collect an alleged debt (4) using its vendor LiveVox (5) within four years of September 8, 2013, (6) during a period of an automatic stay as ordered from a Bankruptcy Court.

Dkt. No. 169 at 2. The Court will assume for purposes of this ruling that the requirements of Rule 23(a) are satisfied with regard to this class, because it is clear to the Court that the superiority and manageability requirements of Rule 23(b) are not.

The problem with this proposed class is that the Plaintiff has not provided a mechanism for how it will identify its members. The Plaintiff suggests that it can start from the list of persons who were called during the relevant time period and whose accounts were given a certain code by the Defendants, and then perform a "ministerial act" of reviewing bankruptcy court dockets to determine which of those persons filed for bankruptcy. This suggestion ignores the fact that this method would not identify the Plaintiff herself or others like her who filed for bankruptcy but whose account was not coded as doing so by the Defendants. It also equates filing for bankruptcy with the imposition of an automatic stay, when there are circumstances in which a bankruptcy filing does not result in a stay. *See* 11 U.S.C. § 362. The determination of whether there was an automatic stay in a particular case and, if so, until what date, is not necessarily a ministerial act. The Plaintiff offers no explanation of how "compar[ing] bankruptcy filing dates to call dates," Dkt. No. 183 at 14, will be sufficient to determine whether

the call dates were made during the pendency of an automatic stay; she does not address the need to determine (1) if an automatic stay did, in fact, take effect; and (2) if so, when the stay was lifted. In addition, if the class member filed under Chapter 13, any claim that accrued during the pendency of the bankruptcy proceeding was property of the estate, and if it was not disclosed as an asset during the pendency of the bankruptcy case, it cannot be pursued without reopening that case. *Rainey v. United Parcel Serv., Inc.*, 466 Fed. Appx. 542 (7th Cir. 2012).

Because the Plaintiff failed to articulate an actual plan for identifying the members of the Bankruptcy Class, the Plaintiff has failed to establish both superiority and manageability as to that proposed class. Accordingly, the motion to certify is **DENIED** with regard to the Bankruptcy Class.

### III. CONCLUSION

For the reasons set forth above, the Court **DENIES** the Plaintiff's motion to certify the Bankruptcy Class. Provided that the Plaintiff and her counsel revise the representation agreement to remove the requirement that the Plaintiff pay fees, expenses, and costs if she were to withdraw her claim or settle individually against her attorneys' advice and submit an executed copy of the revised representation agreement to the Court within **ten days of the date of this Entry**, the Court will enter an order certifying the following Stop Class:

> (1) All persons within the United States (2) to whose cellular telephone number (3) Credit Protection Association, L.P., sent a text message (4) using its vendor RingClear (5) within four years of September 8, 2013, (6) after the cellular phone owner replied with the one-word reply "stop" in any combination of uppercase and lowercase letters other than "STOP" in all uppercase letters.

**Within fourteen days of the date of the Court's certification order**, the parties shall file a proposed case management plan that sets forth a comprehensive schedule for bringing this case to a conclusion.

SO ORDERED: 9/26/18

_____
Hon. William T. Lawrence, Senior Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification