UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| Katherine Lanteri, individually and on behalf of all others similarly situated | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Case No. 1:13-cv-1501-JMS-MJD |
| Credit Protection Association, L.P., *et al.* | ) ) ) |
| Defendants. | ) |

**SECOND REPORT ON SUGGESTIONS FOR PROCEEDING[1]**

Pursuant to the Court's March 23, 2020 Order [ECF 261], which directs the parties to suggest a schedule for proceeding in light of the Seventh Circuit's ruling in *Gadelhak v. AT&T Servs., Inc.*, No. 19-1738, the parties hereby submit their proposals.

<u>The Class's Proposal</u>

Currently pending are the parties' cross-motions for summary judgment on whether Defendants are liable under the Telephone Consumer Protection Act ("TCPA") for debt collection text calls they made to Plaintiff and the Class after they told Defendants to stop. [*E.g.* Dkt. #237]. The main issue briefed was whether the system Defendants used to make the text calls qualifies as an "automatic telephone dialing system" (ATDS) subject to the TCPA. Although it has long been the law that a system meets the test if it dials from a stored list, like the Ring Clear system

---

[1] At 3:35 p.m. this afternoon, Defendants sent their portion of the report, consisting of six and a half pages. Plaintiff added an additional footnote and a few additional paragraphs responding to Defendants' lengthy position, but while they were being drafted, Defendants' counsel advised he did not have time to review Plaintiff's additions before filing and that, to the extent the Class's additions differ materially from the position on which Defendants' position was based, Defendants will timely seek leave to file a supplemental or amended position statement.

1

94365

Defendants used here,[2] and although the Class relied on that authority in seeking judgment against Defendants for the text calls they made to Plaintiff and the Class, *Gadelhak* abandoned that long-standing rule and held list-based dialing systems do not qualify as an ATDS.

Accordingly, the Class proposes the parties withdraw their pending cross-motions for summary judgment, and file new cross motions based on the alternative theory of TCPA liability Plaintiff alleged.[3] Specifically, as referenced in the parties' most-recent status report, Plaintiff also claims Defendants violated the TCPA by making prerecorded-voice calls. (*See* Dkt. #260 (March 20, 2020 Report) at p.2, n.1; *see also* Dkt. #1 (Complaint) at ¶40, ¶50, ¶57). Liability for these calls does not require proof that Defendants used an ATDS. 47 U.S.C. §227(b)(1)(A)(iii) (prohibiting calls to cell phone made using an ATDS "or" an artificial or prerecorded voice). And Defendants do not dispute they made such calls to the Class;[4] indeed, the prerecorded calls Defendants made to Plaintiff are a form recording. (Dkt. #237-1 (Duan Dep. at p.70, line 15, to p.73, line 3)).

Finally, Plaintiff and the Class have already established the dates after which Defendants lacked consent to make the calls because, as shown in the current summary judgment briefing, they each sent Defendants a text expressly telling Defendants to "stop." (Dkt. #238 (Memo in Support of Plaintiff's Cross-Summary Judgment Motion) at p.5).

---

[2] *Blow v. Bijara*, 855 F.3d 793, 801 (7th Cir. 2017) ("in 2003 and again in 2008, the FCC determined that 'predictive dialers,' which dial numbers from customer calling lists, fell within the meaning and statutory definition of an autodialer and the intent of Congress."). In reliance on this authority, the Class sought hold Defendants liable for their text calls using that system.

[3] The parties' cross motions also addressed Plaintiff's claims under the Fair Debt Collection Practices Act. Those claims can be resolved in the re-briefing as well.

[4] Except, apparently, to the extent they claim they used a vendor to place the calls, an issue already briefed at length in the parties' summary judgment motions. [Dkt. #238 at pp. 33-38].

94365

If Plaintiff successfully establishes Defendants' form prerecorded voice calls violate the TCPA, all that will remain is to prove up damages, *i.e.*, counting the number of prerecorded calls Defendants made to the Class after their stop requests,[5] because the TCPA automatically provides $500 in statutory damages per call. 47 U.S.C. §227(b)(3)(B). This sort of ministerial prove up phase is appropriate in class actions. *See*, *e.g.*, *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 667 and 671 (7th Cir. 2015) (describing an "claims administration process" in which class members present affidavits). And here it is even easier than other cases because the class is small (only 4,362 members) and, instead of affidavits, the class members' claims will be determined objectively based on Defendants' call records, *i.e.* the records will show whether there was a prerecorded call after a stop request or not.

This process is routinely undertaken after liability has been determined. *See Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1275 (11th Cir. 2019) (remanding TCPA class case to address standing issues, but also explaining, "[i]f most class members made these requests, <u>or</u> if there is a plausible straightforward **method to sort them out at the back end of the case**, then the class might appropriately proceed as it is currently defined.") (emphasis added).

Similarly, the Fourth Circuit recently affirmed an award of damages for a TCPA class where there were still 4,798 unidentified class members as of trial. *See Krakauer v. Dish Network, L.L.C.*, 2017 U.S. Dist. LEXIS 117713, *1-2 (M.D. N.C. Jul. 27, 2017) (post-trial order in TCPA case outlining claims process for class members who were not yet "clearly identified"), *affirmed*, 925 F.3d 643 (4th Cir. 2019). As noted by the district court, other courts have used special masters (permitted by Fed. R. Civ. P. 53) to address such matters, even post-trial. *Id.* at *10-11 (citation

---

[5] Defendants still need to produce these call records, which should have already been produced because they were requested in discovery. But there is no need to reach that issue until it is determined the pre-recorded voice calls after the stop request violate the TCPA.

omitted). Of course, no special master is needed here as it is a simple administrative process to count the number of prerecorded calls after the stop request. To this point, the Fourth Circuit emphasized the TCPA was well-suited for the class mechanism:

> Given the remedial purpose of the TCPA, it is no surprise that its cause of action would be conducive to class-wide disposition. In enacting the law, Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications.

925 F.3d at 656; *see also Ira Holtzman, C.P.A. & Assoc. Ltd. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (noting proceeding on a class basis under the TCPA is the norm).

Contrary to what Defendants claim, *Gadelhak* only affects the Class's ability to recover calls made using an ATDS. As noted above, it does not affect the Class's ability to recover for calls made using an artificial or prerecorded voice, or change the fact that those claims both exist here and have not yet been addressed. The stay pending *Gadelhak* does not change these facts – the parties agreed to the stay to save the Court the trouble of deciding an issue the Seventh Circuit was about to decide.

Likewise, the fact that the Class is defined to include persons Defendants called by text who return-texted the word "stop" to revoke Defendants' consent to call them does not change the fact those persons can also recover for prerecorded voice calls made after the stop request.[6] Contrary to Defendants' unsupported claim, there is evidence in the record the Class received pre-recorded messages because, as noted above, Plaintiff (who is a class member) got those messages. For example, Plaintiff's account records show the dates of the calls, and Plaintiff's voicemail

---

[6] Under the TCPA, text calls and voice calls are treated the same. Both are "calls" under the Act. *See Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 667 (2016).

4

94365

recordings from Defendants were all prerecorded calls. As can be seen from the following excerpt, the date of the call is identified, plus the code for the call and the code for the user (code 1003 shown on the below records is for the automated system).

```
07-11-2013     SENT LETTER NUMBER                4106              SRT
06-21-2013     SENT TEXT MESSAGE                 3849    1003      SRT
06-21-2013     DEBTOR EXTRACTED FOR CALL         3849    1003      SRT
05-22-2013     SENT TEXT MESSAGE                 3849    1003      SRT
05-22-2013     DEBTOR EXTRACTED FOR CALL         3849    1003      SRT
05-01-2013     SENT TO CB                        Y       1003      SRT
03-27-2013     DEBTOR EXTRACTED FOR CALL         3849    1003      SRT
```

As such, it is a simple administrative matter to identify the prerecorded calls after the stop texts that were sent, the dates for which are already in the record.

Thus, the Class is not seeking a do-over, or to change its composition, but to simply address an alternative theory of liability pled in the complaint that arises from the evidence.[7] Indeed, although unnecessary here because the complaint has alleged this claim since day one, plaintiffs are commonly allowed to amend their complaint *post-trial* to conform to the evidence and, as shown, in class actions ministerial prove ups are appropriately left to the end of the case.

Further, Defendants statements about discovery are misplaced. Defendants do not dispute Plaintiff asked for discovery about prerecorded calls in addition to text calls, and the parties jointly noted prerecorded voice call claims still needed to be resolved in the status report they just filed with the Court only two weeks ago. (*See* Dkt. #260 (March 20, 2020 Report) at p.2, n.1). In any event, as stated above, there is no discovery issue before the Court at this time, as there is no need

---

[7] Defendants' statement that the notice to the class does not discuss this theory is misplaced because the notice mailed to the class did not discuss legal theories (as that is not the purpose of the notice), but it did direct the class members to a Website containing information about the case, including the complaint, which squarely alleges a right to recover for prerecorded voice calls.

5

to reach that issue until it is determined Defendants' prerecorded voice calls after Plaintiff's and the Class's stop request violate the TCPA.

Finally, Plaintiff's proposal does not deprive Defendants of a judgment regarding claims arising from the text calls, as Defendants claim. Accordingly, there is no unfairness.

Defendants' Proposal

This is not how class actions work. Plaintiff's flippant proposal on how to proceed is flawed for far more reasons than can be addressed in the time given to review and prepare this status report. This case has been pending for six and a half years. The litigation has been laser focused on the text class. That discovery included court monitored discovery disputes, lasting over a year, involving ESI liaisons, multiple expert reports, and three class certification motions. As this Court is well aware, the parties then briefed cross motions for summary judgement, which were stayed pending the *Gadelhak* decision.

The *Gadelhak* decision defeats the Class's claims. The fact that Plaintiff wants a do over is facially prejudicial to the Defendants, who agreed to the stay and who have defended these class claims to the eve of a favorable resolution. The fact that Plaintiff does not want to proceed on the theory on which the class was certified gives the game away. To the extent the Court is considering Plaintiff's position, Defendant requests an opportunity to file a more thorough response given the extreme nature of the request[8].

---

[8] On March 30th, Class Counsel emailed Defendants' counsel and said, "the Class Rep. plans to seek time to enforce her discovery about pre-recorded calls Defendants made to class members after their stop requests, to try to prove the class claim that way," and said they intended to seek leave to re-open discovery. Defendants began preparing to address a motion to re-open discovery. Then, on April 1st at 9:20 p.m., Plaintiff circulated their position, which may or may not abandon that earlier position. When asked if they still intended seek leave to re-open discovery, Class Counsel said "I don't think there's any ambiguity in our position. It addresses discovery." Despite Plaintiff's assurance that there is no ambiguity, Defendants do not know if the Court will consider this report as a motion to re-open discovery. In the event it is inclined to do so, Defendants

6

**Brief Summary of Procedural History**

The entire docket is worthy of review to assess how much work was done on the issue of the text class, as it reveals that it is the only issue that was litigated. For the benefit of the Court, and in light of the change in judicial assignments on this case, Defendants will very briefly summarize the relevant procedural history of this case. Plaintiff filed the class action lawsuit in September 2013. In 2014 and 2015, the parties proceeded through class discovery disputes. The discovery disputes were moderated by Magistrate Judge LaRue. They also involved ESI liaisons, and covered four potential subclasses, including the novel theory Plaintiff now wishes to pursue. In the process, however, Class counsel did not pursue discovery related to calls to the Class. Instead, Class counsel took discovery on the text class and bankruptcy class. There were a total of seven court hearings on ESI discovery. Plaintiff ultimately disclosed an expert who ultimately provided several amended reports and was deposed twice.

Plaintiff filed multiple class motions, none of which sought to certify a class based upon phone calls. Those motions were entirely consistent with Class counsel's decision to focus on the text and bankruptcy classes discovery during the Court monitored discovery process. After denying and repeatedly narrowing the class issues in the first few motions for class certification, Judge Lawrence ultimately certified the following class limited to texts:

> (1) All persons within the United States (2) to whose cellular telephone number (3) Credit Protection Association, L.P., sent a text message (4) using its vendor RingClear (5) within four years of September 8, 2013, (6) after the cellular phone owner replied with the one-word reply "stop" in any combination of uppercase and lowercase letters other than "STOP" in all uppercase letters.

Dkt. No. 201.

---

respectfully submit that they have not had sufficient time to investigate and outline the issues and challenges, given it only received the Plaintiff's position less than 48 hours before the deadline to file.

94365

Finally, as the Court is aware, the parties fully briefed cross-motions for summary judgment. "As [the Seventh Circuit] has often stated, summary judgment 'is the "put up or shut up" moment in a lawsuit, where a party must show what evidence it has that would convince a trier of fact to accept its version of events[9].'" Yet the Class did not move on the theory it now seeks to pursue. It instead put up, found out it was going to lose, and want to do it over. That is not appropriate in class practice generally, or in this case in particular.

### The Class Cannot Recover on a Different Theory than the One Certified

This class will obviously lose in light of *Gadelhak*. The Class now wants to avoid that judgment and start over. But class actions are not so fickle. The Court cannot just assume that the set of people who received texts also received calls using prerecorded voice messages. There is no evidence of that, let alone a motion to address that issue. Nor should this Court deny Defendants the opportunity to present defenses to the certification of a new class of persons who received voice messages, such as the need for individualized inquiries[10]. This is not how class actions work.

There is no evidence anywhere in the record that the Class certified received phone messages. The evidence that is in the record shows that none of the class member received phone messages from RingClear because CPA only used RingClear to send texts. There is no evidence in the record that by texting with the one-word reply "stop" in any combination of uppercase and lowercase letters other than "STOP" in all uppercase letters in response to a text meant the class members also wanted to stop phone calls. This omission is critically prejudicial to the Defendants

---

[9] *See, e.g., Koszola v. Board of Educ. of City of Chicago,* 385 F.3d 1104, 1111 (7th Cir. 2004) (collecting cases and quoting *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003)).

[10] There are additional prejudicial concerns of proceeding in such a haphazard way. If the Court were to enter judgment on a theory that did not apply to the certified class, there are issues of one-way intervention. There are also possible defenses to class certification that cannot be addressed until the class definition is presented, such as an improper fail-safe class, among many others.

94365

as if the theory they now pursue had been pursued and developed, and presented in a motion for class certification, Defendants could have developed the evidentiary record to address and defeat it. But that is now how Class counsel opted to proceed.

There is an additional issue, completely ignored by Class counsel, as it pertains to notice to the Class. Presently, the Class is aware that they are litigating the issue of whether their TCPA claims regarding texts after they told RingClear to stop are being litigated. They are not aware that Class counsel is seeking to instead now litigate whether the phone calls after they told RingClear to stop violate the TCPA. Some may not have received phone calls, and some may have received multiple messages. It is not clear if the current class members will be made aware of the new claims. Certainly, someone who received multiple phone calls, but only one text, might wish to opt out. But the time to opt out has passed. The Class's disorganized suggestion is silent on this point, and seems not to care about informing the Class of the shifting theory that may take them out of the Class entirely[11].

Finally, and most prejudicial to Defendants, the Class's proposal presents arguably the most bizarre result in a class context one could fabricate. In this case, we have a class certified of those who received texts from RingClear after telling RingClear to stop. We now know that Defendants are entitled to judgment against the Class. The Class now wants to deprive Defendants of that judgment to which they are entitled, and instead seek judgment on a totally different theory that does not apply to the certified class. That is just not fair. But it is also just bizarre. Three or

---

[11] Ironically, this new position puts the Plaintiff and Class counsel at odds with current members of the Class who received texts, but did not receive phone calls, as it completely abandons their claims, apparently without notice. That alone has implications on the adequacy of representation, which is obviously an element Plaintiff must prove in a Rule 23 class action.

9

94365

four[12] of the six characteristics of the Class definition are apparently no longer at issue in this case under the Class's proposal. Under the Class's approach, we will just ignore the definition where convenient to avoid judgment under *Gadelhak*, and then plug in a new theory for a class that was never certified without giving the Class notice. This approach simply turns class practice on its end. The Class is bound by the choices made by its representatives, and the Defendants are bound to the entire Class even though only the representative are present. The Class does not get the benefit of hindsight, learning that they will lose, and then depriving Defendants of a judgment.

This approach is so riddled with flaws as to be incapable of addressing them all in the short time given drafting this joint status report. Defendants should not be forced to litigate a class action with such enormous consequences in this way. Class counsel made strategic litigation decisions, and they do not get a do-over.

### Specific Responses to Plaintiff's Position

To the extent the Court is considering allowing Plaintiff to proceed as proposed, Defendants respectfully request additional time to create a more full record on these issues, or at least a telephonic hearing to make a record. There are numerous assumptions, incorrect legal positions, and incorrect statements or innuendos in the Class's Proposal, but to highlight just a few:

- It is not accurate to imply that the issue of what constitutes an ATDS was long settled, and somehow reversed in *Gadelhak*. This issue has been heavily litigated for years. It also matters not with respect to the instant request as the issue has been contested in this case from the beginning, so it is no surprise that Defendants briefed this issue, or won on it.

---

[12] The Class is defined as (1) All persons within the United States (2) to whose cellular telephone number (3) Credit Protection Association, L.P., sent a text message (4) using its vendor RingClear (5) within four years of September 8, 2013, (6) after the cellular phone owner replied with the one-word reply "stop" in any combination of uppercase and lowercase letters other than "STOP" in all uppercase letters. At least factors (3), (4), and (6) will be disregarded in summary judgment.

94365

- Similarly, *Gadelhak* cannot be summarized simply as "abandoning that long-standing rule [by holding] list-based dialing systems do not qualify as an ATDS." Instead, that issue has been considered by several Circuit courts, as well as federal agencies, for years because it was obviously not clear (or not correct). *Gadelhak* did not abandon anything. It addressed an argument that had not been yet addressed, and that took years to get to the Circuit courts. Either way, it matters not, as explained above, this was not a surprise sprung upon Class Counsel at the last hour.

- The Class's proposal to merely withdraw the pending motions for summary judgement and "file new cross motions based upon the alternative theory of TCPA liability" related to placing phone calls completely ignores the fact that a different class, on an entirely different theory and set of facts, is the class that was certified and against whom Defendants are entitled to judgment.

- Class Counsel claims "Defendants do not dispute they made such calls to the Class." That position is patently wrong, in addition to being based upon a faulty premise that this issue was developed in discovery. As an initial matter, Defendant Etan did not make any phone calls or send any texts or do anything in regards to the Plaintiff or the Class, as demonstrated at length in the cross motion for summary judgment. Moreover, and more problematic, there is no evidence of calls to the Class, as this status report inherently concedes by asking for discovery after ruling on the cross-motions. Finally, Defendants plainly did deny this in the Answer to the Complaint. Dkt. No. 21, ¶¶34-35. It is unclear on what this assertion is based.

- It is not accurate to assume that by texting "stop" to opt out from further texts amounts to revocation of consent to received phone calls, either factually or legally. Defendants would be deprived of this factual defense without discovery, and it is too late to re-do all the discovery needed without severely prejudicing Defendants. The parties spent years on the text class discovery, including expert discovery, and there is no reason phone message discovery would be unnecessary.

- Similarly, determining the number of calls made is not a ministerial task. Determining the number of texts sent to the class required an expert, who provided three disclosures and was twice deposed. Merely because Class counsel asserts (or hopes or claims) it will be ministerial does not make it so. It is also unfair to put Defendants in the position of forcing to re-open discovery to disprove these claims. Discovery closed May 8, 2019. Dkt. No. 219.

- In addition, it is not accurate to state that determining the number of calls made is routinely undertaken after liability has been determined. It is certainly not accurate to imply that leaving discovery on these issues until after judgment is routine. This position plainly ignores that this information is would be considered at class certification, settlement conferences, and nearly all stages of the evaluation of a case. It is also directly in dispute with every discovery dispute Class counsel raised in this case, in which they sought images of the Defendants entire account system for over a year of court monitored discovery. See, among others, Dkt. No. 60.

- Finally, and ambiguously, the Class proposes we could use a special master, except that, "of course, no special master is needed here" because it is a simple

administrative process. Even assuming this were the case, all of this ignores the fact that there is no evidence that the Class received phone calls using prerecorded voice messages. The evidence is that they received texts after they said "stop." That is the class that was certified, and it is no more proper to assume they received messages as it would be to assume they received the same letters that Plaintiff received.

To put a very fine point on this issue, the Class has not filed a motion to reopen discovery, and the Class has not filed a motion to modify the class definition. Those motions would face very high standards because of their extreme nature. To the extent this status report is an effort to be an end-around those motions, it should be rejected.

### Defendants' Conclusion

The Class's proposal is fundamentally unfair to the Defendants. Class counsel wants to deprive Defendants of the judgment against the Class to which they are entitled, and instead brief an issue on summary judgment for a class that was never evaluated or certified, after fully briefing entirely separate issues. The only remaining issue is summary judgment. Defendants agree that the motions should be withdrawn and refiled. Defendants suggest that the Court either set a briefing schedule that begins three weeks from now, or in the alternative, set a short telephonic status to discuss a new briefing schedule.

Respectfully submitted,

| | |
|---|---|
| *s/Keith J. Keogh* | */s/ Justin M. Penn* |
| Keith J. Keogh (Ill. Bar No. 6257811) | Justin Penn |
| Michael Hilicki (Ill. Bar No. 6225170) | HINSHAW & CULBERTSON, LLP |
| KEOGH LAW, LTD. | 151 North Franklin Street |
| 55 W. Monroe St. Suite 3390 | Suite 2500 |
| Chicago, IL 60606 | Chicago, Illinois 60606 |
| keith@keoghlaw.com | dschultz@hinshaw.com |
| mhilicki@keoghlaw.com | jpenn@hinshawlaw.com |
| (312) 726-1092 | (312) 704-3000 |
| | *Defendants' Counsel* |

David J. Philipps (Ill. Bar No. 06196285)
PHILIPPS & PHILIPPS LTD
9760 South Roberts Road Suite One

94365

Palos Hills, IL 60465
davephilipps@aol.com
(708) 974-2900
*Class Counsel*

13

94365